**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

```
------------------------------------------------------------X
DONNA PIEBER, on behalf of herself and      :
all others similarly situated,               :
                                             :      Case No.: 20-cv-13051-LVP-CI
                 Plaintiffs,                 :
                                             :
           -against-                         :
                                             :
SVS VISION, INC.                             :
                                             :
                 Defendant.                  :
------------------------------------------------------------X
```

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR APPROVAL
<u>OF FAIR LABOR STANDARDS ACT SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION…………………………………………………………………… 1

FACTUAL AND PROCEDURAL BACKGROUND……………………………… 2

  I.   Factual Allegations……………………………………………………... 2

  II.  History of Litigation and Settlement Negotiations……………………………. 3

       A. Pre-Suit Investigation and Mediation…………………………………. 3

       B. Litigation History………………………………………………… 4

SUMMARY OF THE SETTLEMENT TERMS……………………………………… 5

  I.   The Settlement…………………………………………………………… 5

  II.  Eligible Class Members and Notice Process…………………………………... 5

  III. Release…………………………………………………………………… 7

  IV. Allocation Formula……………………………………………………… 7

ARGUMENT…………………………………………………………………... 8

  I.   The Settlement Is Fair and Reasonable and Should Be Approved……………………. 8

       A. The Settlement Fairly and Reasonably Resolves a *Bona Fide* Dispute

          Between the Parties…………………………………………………….. 9

       B. The Settlement Allocation is Reasonable…………………………………… 12

  II.  The Settlement Notice is Sufficiently Informative and Should be Approved…………. 14

  III. The Service Awards to the Named Plaintiff and Opt-In Plaintiff Should Be

       Approved As Fair and Reasonable……………………………………………….. 14

  IV. Attorneys' Fees and Costs Should be Approved as Fair and Reasonable……………… 19

  V.  CONCLUSION…………………………………………………………… 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400,
    2012 WL 6707008 (E.D. Tenn. Dec. 26, 2012) .................................................. 8

*Beckman v. Keybank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2012) ........................................................... 10

*Bert v. AK Steel Corp.*, No. 02 Civ. 467,
    2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ................................................ 16, 18

*Black v. SettlePou, PC*,
    732 F.3d 492 (5th Cir. 2013) ........................................................... 21

*Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738,
    2014 WL 3778211 (D. Conn. July 31, 2014) ....................................... 8, 14, 17, 20

*Braunstein v. E. Photographic Labs., Inc.*,
    600 F.2d 335 (2d Cir. 1978) ........................................................... 20

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. ........................................................................ 24

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, *et al.*,
    2010 WL 1948198 (S.D.N.Y. May 11, 2010) ................................................. 15

*Craig v. Rite Aid Corp.*,
    2013 U.S. Dist. LEXIS 2658 (M.D. Pa. Jan 7, 2013) .................................... 13, 14

*Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 06 Civ. 299,
    2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) ............................................... 9, 12

*Dallas v. Alcatel-Lucent USA, Inc.*, No. 09 Civ. 14596,
    2013 WL 2197624 (E.D. Mich. May 20, 2013) ......................................... 14, 15, 16

*Daniels v. Prod. Mgmt. Indus., LLC*,
    2018 U.S. Dist. LEXIS 76933 (W.D. La. April 20, 2018) ............................... 22, 23, 24

*Date v. Sony Elec., Inc.*, No. 07 Civ. 15474,
    2013 WL 3945981 (E.D. Mich. July 31, 2013) ......................................... 14, 15, 18

*deMunecas v. Bold Food, LLC*, No. 09 Civ. 440,
    2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ............................................. 20-21

*Dixon v. Zabka*, No. 11 Civ. 982,
    2013 WL 2391473 (D. Conn. May 23, 2013) ................................................. 8

*Farmer v. Ottawa Cnty.*,

211 F.3d 1268, 2000 WL 420698 (6th Cir. 2000) .................................................. 19

*Fegley v. Higgins*,
    19 F.3d 1126 (6th Cir. 1994) .................................................................. 20

*Fisher v. Stolaruk Corp.*,
    648 F. Supp. 486 (E.D. Mich. 1986) .................................................. 19-20

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ...................................... 15, 16, 17-18

*Genesis Healthcare Corp. v. Symczyk*,
    133 S. Ct. 1523 (2013) ........................................................................ 8

*Gentrup v. Renovo Servs., LLC*, 07 Civ. 430,
    2011 WL 2532922 (S.D. Ohio June 24, 2011) ........................ 8-9, 10, 14

*Griffin v. Flagstar Bancorp. Inc.*, No. 10 Civ. 10610,
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ......................... 14-15, 24

*Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029,
    2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011).................................... 17, 18

*Halleen v. Belk, Inc.*, No. 16-cv-00055,
    2018 U.S. Dist. LEXIS 214015 ...................................................... 18-19

*Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381S,
    2010 WL 5490833 (W.D.N.Y. Dec. 21, 2010) .................................... 12

*Hoffman-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989) ............................................................................ 8

*Johnson v. Brennan*, No. 10 Civ. 4712,
    2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .................................... 20

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ........................................................ 21, 22

*Lonardo v. Travelers Indem. Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio 2010) ............................................ 16

*Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351,
    2012 WL 2775019 (S.D.N.Y. July 6, 2012) ...................................... 19

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) .......................................................... 8

*McKenna v. Champion Int'l Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ............................................................ 8

*O'Brien v. Ed Donnelly Enters., Inc.*,

575 F.3d 567 (6th Cir. 2009) .................................................................. 8

*In re Packaged Ice Antitrust Litig.*, No. 98 MDL 1952,
2012 WL 5493613 (E.D. Mich. Nov. 13, 2012) ................................... 15

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670,
2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ............................... 15, 17, 18

*Perdue v. Kenny A.*,
559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed 2d 494 (2010) ................... 21

*Pritchard v. Dent Wizard Int'l Corp.*,
210 F.R.D. 591 (S.D. Ohio 2002) ........................................................... 8

*Ramey v. Cincinnati Enquirer, Inc.*,
508 F.2d 1188 (6th Cir. 1974) ............................................................. 20

*Sewell v. Bovis Lend Lease, Inc.*,
No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ..... 17, 18

*Silberblatt v. Morgan Stanley*,
524 F. Supp. 2d 425 (S.D.N.Y. 2007) .................................................. 17

*Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ..... 19

*In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, *et al.*,
2013 WL 2010702 (W.D. Ky. May 13, 2013) ...................................... 16

*Thompson v. Bruister & Associates, Inc.*,
967 F. Supp. 2d 1204 (M.D. Tenn. Aug. 23, 2013) ............................... 8

*Tobin v. Beer Capitol Distrib. Inc.*, No. 12 Civ. 274,
2012 WL 5197976 (E.D. Wis. Oct. 19, 2012) ...................................... 14

*Toure v. Amerigroup Corp.*, No. 10 Civ. 5391,
2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ....................................... 19

*Turner v. Perry Twp., Ohio*, No. 03 Civ. 455,
2005 WL 6573784 (S.D. Ohio Dec. 30, 2005) .................................... 20

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G
& M Roofing & Sheet Metal Co., Inc.*,
732 F.2d 495 (6th Cir. 1984) ............................................................... 19

*Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698,
2007 WL 7232783 (S.D.N.Y. June 25, 2007) ............................... 15, 17

*Wade v. Werner Trucking Co.*, No. 10 Civ. 270,
2014 WL 2535226 (S.D. Ohio June 5, 2014) .................................. 8, 14

*Wilson v. D & N Masonry, Inc.*, No. 12 Civ. 922,

2014 WL 1789136 (S.D. Ohio May 5, 2014) .......................................................... 19

*Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230,
   2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ........................................................ 14

**Statutes**

29 U.S.C. §  216 ............................................................................................................  4

**Rules**

Federal Rule of Civil Procedure 23  ............................................................................. 8

## <u>INTRODUCTION</u>

Following over 18 months of extensive arm's-length negotiations and litigation, including extensive discovery, Named Plaintiff, Donna Pieber (hereinafter "Named Plaintiff" or "Pieber"), and Defendant, SVS Vision, Inc. (hereinafter, "Defendant" or "SVS"), have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective basis for significant monetary relief on behalf of 36 salaried, exempt-classified Retail Office Managers ("ROMs") employed by SVS in the United States between April 15, 2016 to March 15, 2019 (hereinafter "the Relevant Period") who did not enter into arbitration agreements containing class or collective action waivers.  Under the settlement, the ROMs will be recovering compensation for approximately 4.9 hours of overtime each week within the FLSA's 3-year statute of limitations.  In addition to recovering the alleged overtime damages, the ROMs will also receive an amount equal to their alleged overtime compensation as liquidated damages.  This is a significant recovery because SVS maintained records of the hours the ROMs worked each, which reflected that on average, the ROMs worked 4.9 overtime hours each week.

The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona-fide* dispute, was reached after contested litigation, and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law.  Accordingly, the parties respectfully request that the Court issue an order: (1) approving the settlement set forth in the Joint Stipulation of Settlement ("Settlement Agreement") attached as Exhibit A to the Declaration of Camar R. Jones in Support of Motion for Approval of Settlement ("Jones Declaration");[1][2] (2) approving the proposed Settlement Notice;

---

[1]     Unless otherwise indicated, all exhibits are attached to the Jones Declaration.
[2]     Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

(3) approving the settlement fund of $105,000.00 and the allocation formula for payments to the Eligible Class Members (4) approving service awards of $6,000.00 to Named Plaintiff Donna Pieber, and $3,000.00 to Opt In Plaintiff, Tylene Caudell (hereinafter "Caudell"); and (4) approving Plaintiffs' Counsel's request for ***separately negotiated*** attorneys' fees in the amount of $80,000.00, and costs and litigation expenses in the amount of $6,000.00.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual Allegations

Named Plaintiff Pieber was formerly employed by Defendant as a ROM in Florissant, Missouri.  Plaintiff alleges, on behalf of herself, and a putative collective of ROMs, that Defendant willfully violated the Fair Labor Standards Act ("FLSA") by improperly classifying her and other ROMs as exempt from overtime. ECF No. 1.  Plaintiff sought recovery of overtime wages, and liquidated damages, as well as attorneys' fees and costs.

Defendant denies the allegations in the Complaint, and maintains that it properly classified all ROMs as exempt from the overtime provisions of FLSA, and that even if Plaintiff was correct on the merits of her claim, a putative collective action could not be certified because ROMs were not similarly situated.  Further, Defendant maintained that at all times it acted in good faith, and without any willful conduct, as it conducted a full legal assessment of its classification of ROMs with both in-house and outside legal counsel. Therefore, Plaintiff and the other ROMs' damages would be limited to the FLSA's 2-year statute of limitations, and they would not be entitled to liquidated damages in addition to overtime wages.

## II.    History of Litigation and Settlement Negotiations

### A.  Pre-Suit Investigation and Mediation.

Before the initiation of this action, Named Plaintiff, Opt In Plaintiff Caudell and Shavitz Law Group, P.A. ("SLG") conducted a thorough investigation into the merits of the potential claims and defenses.  Jones Decl. ¶ 7.  SLG focused the investigation and legal research on the underlying merits of the ROMs' claims, the damages to which they were entitled, and the propriety of collective action certification.  *Id.*  SLG obtained and reviewed documents from Named Plaintiff Pieber and Opt-In Plaintiff Caudell, including job descriptions, pay records, standard operating procedures, work schedules, performance evaluations, and correspondence with supervisors and colleagues.  *Id*.  SLG also conducted in-depth interviews of Named Plaintiff Pieber, Opt-In Plaintiff Caudell, and other former ROMs.  *Id*.

After completing their investigation, in March 2019, SLG, notified SVS of the claims of the collective of ROMs, and invited SVS Vision to explore a potential pre-litigation resolution of the ROMs' claims. *Id.* ¶ 8.  The parties subsequently agreed to explore pre-suit mediation.  *Id.*  To facilitate mediation, SVS provided the following data for the 36 ROMs who were employed by Defendant during Relevant Period[3]: (a) the number of weeks during which ROMs were employed; (b) the salaries paid to each ROM; and (c) time record summaries outlining the hours ROMs worked each week (because ROMS were required to record the hours they worked although they were not paid overtime).  *Id.*  This data was used to prepare a damage model reflecting the potential overtime owed to the Eligible Class Members, including assumptions for the number of hours

---

[3] The data was limited to 36 ROMs because all other ROMs employed by Defendant signed arbitration agreements which contained class and collective action waivers.  On approximately March 15, 2019, Defendant implemented an "alternative dispute resolution" ("ADR") program, which prevented ROMs employed on or after that date from participating in a class or collective action.  The 36 ROMs at issue are all former employees of Defendant.

Eligible Class Members worked each week, Defendant's potential exposure within the 2 and 3 year statutes of limitations, and potential exposure for liquidated damages.  *Id.*  Additionally, the parties entered into a tolling agreement effective April 15, 2019 preserving the statute of limitations relating to the wage claims of the Named Plaintiff and the putative collective of ROMs. *Id.*  On December 11, 2019, the parties participated in a full-day mediation conference facilitated by retired judge Honorable Stuart Nudelman in Chicago, Illinois.  *Id.*

The parties were unable to resolve the claims at mediation.  *Id.* at ¶ 9.  However, the parties continued to engage in informal settlement negotiations for 10 months following mediation.  *Id.* The parties were ultimately unable to resolve the claims presuit.  *Id.*  As a result, Plaintiff filed this action for unpaid overtime on November 16, 2020 through her counsel, SLG and Pitt McGehee Palmer Bonanni & Rivers, P.C. ("Pitt McGehee").  ECF No. 1.; *Id.*

### B.    Litigation History

In her Complaint, Named Plaintiff Pieber, alleged that SVS violated the FLSA by misclassifying her and other salaried ROMs as exempt from the overtime provisions of the FLSA. *Id.* at ¶ 10.  Plaintiff Pieber asserted her claims on behalf of herself and all other ROMs who worked for SVS in United States. *Id.* In addition, Opt In Plaintiff Caudell filed her Consent to Join Form pursuant to 29 U.S.C. § 216(b) to become a party to the lawsuit.  *See* ECF No. 1-1; *Id.* Defendant filed its Answer on January 28, 2021.  *See* ECF No. 5; *Id.*

This Court entered a Scheduling Order on March 4, 2021, which required Named Plaintiff to file her Motion for Conditional Certification pursuant to FLSA § 216(b) by July 2, 2021.  *Id.* at ¶ 11.  The parties proceeded with discovery.  *Id.* Defendant served requests for production of documents and interrogatories on Named Plaintiff Pieber, to which she responded, and produced over 800 pages of responsive documents.  *Id.*  Named Plaintiff and Opt In Plaintiff also served

4

requests for production and interrogatories on Defendant. *Id.* at ¶ 12. In response, Defendant produced over 7,000 pages of discovery documents, inclusive of personnel files, payroll documents, job descriptions, standard operating procedures, company policies, e-mail communications, and documents relating to Defendant's evaluation of the ROM position, and decision to classify ROMs as exempt from overtime. *Id.* The parties also scheduled and prepared for the depositions of the Named Plaintiff, and Defendant's Corporate Representatives. *Id.*

As the parties proceeded with discovery and document review, and prepared for the depositions, the parties agreed to re-engage in settlement discussions based on their evaluation of the extensive discovery completed at that time. *Id.* at ¶ 13. From the discussions, the parties reached a settlement, the terms of which are outlined below, and in the parties' Settlement Agreement, which has been fully executed by the parties. *Id.*

## SUMMARY OF THE SETTLEMENT TERMS

### I.      The Settlement

The total amount of the settlement is $200,000.00. *Id.* at ¶ 14. The gross settlement amount covers: (a) the Eligible Class Members' awards totaling $105,000.00; (b) service awards to the Named Plaintiff and Opt-In Plaintiff, in the amounts of $6,000.00 and $3,000.00 respectively; (c) attorneys' fees in the amount of $80,000.00; and (d) costs in the amount of $6,000.00. *Id.*

### II.     Eligible Class Members and Notice Process

The settlement is intended to compensate 36 Eligible Class Members who were formerly employed by SVS as ROMs during the Relevant Period who did not execute arbitration agreements. *Id.* The Eligible Class Members are listed in Attachment 1 to the Settlement

Agreement, which also includes the settlement amounts they will be paid based on the allocation formula below.[4] *Id.*

No later than 40 days after the Court issues an Order approving the settlement ("Payment Date"), Defendant will have the Eligible Class Members' Settlement Checks delivered to Plaintiffs' Counsel, along with the payments for the service awards, and attorneys' fees and costs. *Id.* at ¶ 15.   Before delivering the checks, Defendant will perform a "skip trace" to obtain the correct address of each Eligible Class Member, and provide the Last Known Mailing Addresses for each of the Eligible Class Members when delivering the Settlement Checks to Plaintiff's Counsel.  *Id.*

Plaintiffs' Counsel will mail Settlement Notices and Settlement Checks to the Eligible Class Members, *via* First Class United States mail, no later than 2 business days after receiving the Settlement Checks from Defense Counsel.  *Id.* at ¶ 16.  The Settlement Notice will advise the Eligible Class Members of the Settlement and will explain how their settlement shares were determined.  *Id.*  The Notice will also advise Eligible Class Members that by negotiating, signing cashing, or depositing the settlement check, they will provide Defendant with a release of their overtime misclassification wage and hour claims under the FLSA and applicable state wage and hour laws for the time they worked as salaried, exempt-classified ROMs during the Relevant Period.  *Id.*  The back of the Plaintiffs' settlement checks will also contain the release language. Settlement Checks issued to Eligible Class Members will expire 180 days following their issuance ("Acceptance Period").  *Id.*

Every 30 days, Defendant will provide a list to Plaintiffs' Counsel with the names of the individuals who have cashed Settlement Checks ***and*** those who have not cashed Settlement Checks

---

[4] To protect their privacy, the ROMs have been identified by their first and last initials.  Counsel can provide their full names for in camera review if the Court requires.

up to that date.  *Id.* ¶ 17. If a Settlement Check has not been cashed by any Eligible Class Member within 90 days after it is mailed, Plaintiffs' Counsel shall send a letter or postcard reminding them of the expiration of the Acceptance Period.  *Id.; See* Ex. 5 to Settlement Agreement.  After the Acceptance Period expires, all uncashed Settlement Checks will be void, and SVS will issue a stop payment order on such checks.  *Id.*  In the event an Eligible Class Member reports a lost or destroyed Settlement Check within the Acceptance Period, Defendant will issue a stop payment order on the original check and issue a new check within 14 days of notification of the check being lost or destroyed.  *Id.*  ¶ 18. The reissued check shall be valid for 180 days from re-issuance. *Id.* For any Settlement Check that is returned by the United States Postal Service as undeliverable, Defendant shall perform another skip trace to obtain a correct address, and Plaintiffs' Counsel will re-mail the check within 2 days after being provided an updated address.  *Id.*

## III.    Release

Eligible Class Members who participate in the settlement by negotiating their settlement check ("Participating Settlement Class Members") will release their overtime misclassification wage and hour claims under the FLSA and applicable state wage and hour laws during the time they worked as salaried, exempt-classified ROMs, including claims for liquidated damages, attorneys' fees, costs and expenses relating to the alleged violation during the Relevant Period. Eligible Class Members who do not negotiate a settlement check will not release any claims.  *Id.* ¶ 19.

## IV.    Allocation Formula

Eligible Settlement Class Members will be eligible for a Settlement Check pursuant to an allocation formula based on the number of weeks they worked during the Relevant Period.  *Id.*  ¶ 20.  Each Eligible Workweek that an Eligible Class Member was employed between March 16,

2017 and March 15, 2019 (2 year statute of limitations) will receive 1 full point of credit, and each Eligible Workweek an Eligible Class Member was employed between April 15, 2016 and March 15, 2017 (the third year of the statute of limitations which would require proof of willfulness in litigation) will receive 1/3 point of credit. *Id.* To calculate each Eligible Class Member's proportionate share, all points for all Eligible Class Members will be added together to obtain the "Denominator". *Id.* The number of points for each Eligible Class Member will be divided by the Denominator to obtain each Eligible Class Member's "Portion of the Net Amount". *Id.* Each Eligible Class Member's Portion of the Net Amount will then be multiplied by the Net Amount to obtain their Settlement Check amount. *Id.* Any portion of the Net Amount that is unclaimed by Eligible Class Members who fail to cash their Settlement Check during the Acceptance Period will be retained by Defendant. *Id*.

## <u>ARGUMENT</u>

### I.     The Settlement Is Fair and Reasonable and Should Be Approved.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982); *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400, 2012 WL 6707008, at *2 (E.D. Tenn. Dec. 26, 2012). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *2 (D. Conn. May 23, 2013). If the proposed settlement reflects a reasonable compromise over contested issues, the court should

approve the settlement.[5] *Lynn's Food Stores*, 679 F.2d 1354; *Gentrup v. Renovo Servs., LLC*, 07 Civ. 430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 06 Civ. 299, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008). "Settlement is the preferred means of resolving litigation." *Crawford*, 2008 WL 4724499, at *9 (FLSA collective action).

### A. The Settlement Fairly and Reasonably Resolves a *Bona Fide* Dispute Between the Parties.

The FLSA settlement in this case meets the standard for approval. The settlement was the result of a thorough investigation, vigorously contested litigation with substantial discovery, and arm's-length negotiations. Recognizing the uncertain legal and factual issues involved, the parties reached the settlement pending before the Court. At all times during the settlement negotiation process, negotiations were conducted at arm's-length.

The settlement amount is substantial in light of the considerable risk that Named Plaintiff and the ROMs faced. ***First***, there was a risk that Plaintiffs would not succeed in their motion for conditional certification, and then maintaining a collective through trial. Even if Named Plaintiff was to prevail on her motion for conditional certification, the real possibility remained that SVS

---

[5] Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002) ("[I]n an FLSA "opt-in" collective action the requirements need not be strictly observed because there are no absent class members for the court to protect."). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, *see Thompson v. Bruister & Associates, Inc.*, 967 F. Supp. 2d 1204, 1222 (M.D. Tenn. Aug. 23, 2013). Accordingly, the exacting standards for approval of a class action settlement under Rule 23 do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b).

could prevail on a motion for decertification.   SVS maintained that Named Plaintiff, Opt In Plaintiff and the other Eligible Class Members all exercised independent judgment in managing their stores. For example, SVS maintains how each Eligible Class Members chose to drive his/her store's business and hire, train, and coach his/her staff, was based on their own independent judgment and analysis of the business needs of their specific stores. Thus, SVS would have asserted that decertification is appropriate because of the claimed factual disparity of the Eligible Class Members' claims and the separate proof necessary to establish whether, why, and how the Opt-in Plaintiffs performed their job duties.

*Second*, even if this case could proceed to trial on a collective basis, a trial on the merits would involve significant risks as to both liability and damages.  The position of ROM is the same as a Store Manager in a comparable retail setting.   Litigation of Store Manager-type misclassification claims is highly contextual with facts pointing in both directions.  Moreover, ROMs (like Store Managers) are classified as the highest ranking employees in SVS' stores, unlike Assistant Managers in other retail settings who typically report to a Store Manager.  This fact alone indicates that a Store Manager-like case such as the instant action would be much more difficult to litigate than an AM case.   Additionally, SVS would likely argue that the differences among various ROMs and the locations at which they worked, and other individualized questions preclude collective certification, or would warrant decertification of a collective, if certified.  *See Gentrup v. Renovo Servs., LLC*, 07 Civ. 430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) (finding risks posed by Defendants' positions regarding exemption "justify a compromise settlement which provides a settlement payment to all Plaintiffs").   Although Named Plaintiff and Opt In Plaintiff disagree with these arguments, defendants have prevailed on such arguments.  *See Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 480 (S.D.N.Y. 2012) (listing numerous misclassification cases

where courts have decertified FLSA collectives).  While Named Plaintiff and Opt In Plaintiff believe that they could ultimately establish Defendant's liability, this would require significant factual development.

Ultimately, even if the claims were to survive decertification, Plaintiffs would still have to prove that SVS acted willfully to recover the third year of damages, and also overcome SVS' good faith defense to obtain liquidated damages.  Therefore, there was a risk that the amount of recovery would be significantly reduced.  This risk was a real one because documents Defendant produced in discovery showed that Defendant conducted periodic reviews by its in-house and outside legal counsel of the ROM position to determine whether the position was properly classified, and also consulted with counsel in this regard.  All of the analyses concluded that ROMs were properly classified.

Plaintiff also faced the ultimate risk that if SVS prevailed in proving she was exempt, she would recover nothing.  This settlement eliminates any risk going forward, and provides substantial compensation to the Named Plaintiff, Opt In Plaintiff, and the Eligible Class Members now, as opposed to the uncertainty as to whether there will be a recover a year or more from now. The settlement has been reached after over 18 months of thorough investigation, informal information exchange, settlement negotiations, and litigation, including exchange of over 7,000 pages of documents in discovery.  This allowed the parties sufficient time and information to fully and fairly evaluate the merits of their respective positions, and reach this settlement.

***Third***, additional litigation would result in considerable expense to the parties, and such resources have been put toward resolving the claims.  This case is a complex, collective action that carried significant risks for the Parties as to both legal and factual issues. The Parties agreed to settle the case in order to avoid the burden, expense, and uncertainty of litigating the claims on the

eve of when depositions were scheduled to begin.  There is no question that litigating the case to trial would require substantial time and expenses in addition to that already expended.  Thus, additional litigation undoubtedly would increase the expenses and complexity of this litigation.

### B.    The Settlement Allocation is Reasonable.

The proposed allocation of the settlement is also reasonable.  It awards payments to each Eligible Class Member based on the number of weeks each Eligible Class Member worked for SVS as a ROM during the Relevant Period, which is a reasonable approximation of each Eligible Class Member's damages, given the evidence that ROMs tended to work similar hours.  *see Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381S, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on each plaintiff's length of service was equitable and reasonable); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06 Civ. 299, 2008 WL 4724499, at *10 (E.D. Ky. Oct. 23, 2008) (approving allocation plan showing "that the plaintiffs will receive compensation based on the character of their claims and the amount of time they have been employed by the defendant").  The time records that SVS produced for the ROMs in preparation for mediation reflected that ROMs worked an average of 4.9 overtime hours each week.  Jones Decl. at ¶ 21.  The Net Amount will compensate each Eligible Class Member for approximately 4.9 hours of overtime each week within the 3-year statute of limitations on a half-time basis.  *Id.* Eligible Class Members will also receive compensation for an amount equal to the alleged overtime compensation as liquidated damages ***in addition to*** the recovery for overtime.  *Id.*

The average *net* amount (clear of any attorneys' fees, costs, and service awards) payable to each Plaintiff is $2,916.66.  *Id.* ¶ 22.  This compares favorably to retail assistant manager cases, which are less challenging and complex than store manager-type claims such the instant action. *See, e.g. Ferreira v. Modell's Sporting Goods, Inc.*, No. 11-cv-2395) (S.D.N.Y.) (final approval

obtained March 12, 2015 for $800,000 settlement for class of 689, averaging approximately $1,161 *gross* per putative class member); *Nash v. CVS Caremark Corp.,* 1:09-cv-00079 (D.RI.) (assistant store manager settlement for $34 million, the average class member claimant *gross* recovery was $1,760, a result District Judge McConnell termed "magnificent" at the final approval hearing); *Craig v. Rite Aid Corp.*, 2013 U.S. Dist. LEXIS 2658, at *41 (M.D. Pa. Jan 7, 2013) (assistant manager settlement for $20.9 million, averaging approximately $1,845 *gross* per class member); *Alli v. Boston Market Corp.*, No. 10-cv-0004 (D. Conn.) (final approval obtained April 17, 2012 for $3 million for 1,921 class members averaging approximately $1,561 *gross* per putative class member); *Jenkins v. Sports Authority*, No. 09-cv-224 (E.D.N.Y) (final approval obtained September 30, 2011 for $990,000 settlement for class of 559, averaging approximately $1,771 *gross* per class member).  Moreover, the average awards in these assistant manager settlements were *gross* awards, *inclusive* of attorneys' fees, costs, and service awards, which is not the case here.

The settlement brings the Eligible Class Members significant monetary value, now, instead of years from now, and provides certainty about the outcome.  In addition to disagreeing on liability and whether the Named Plaintiff could obtain conditional certification and not later get decertified, the Parties disagreed about whether a three-year or two-year statute of limitations applied, as well as whether liquidated damages would be recoverable.  Nonetheless, for settlement purposes only, the settlement provides consideration for the third year of the statute of limitations period for Eligible Class Members. Therefore, each Eligible Class Members, even those with weeks worked only in the third year of the statute of limitations, will recover money and liquidated damages under the Settlement Agreement.

**II.      The Settlement Notice is Sufficiently Informative and Should be Approved.**

The Court should also approve the Proposed Settlement Notice.  *See* Ex. 3 to Settlement Agreement (Proposed Notice).  The proposed Settlement Notice informs Eligible Class Members of the terms of the settlement, including the allocation formula, how they may participate, the settlement payment to which they are entitled, the release they provide the Defendant by negotiating the Settlement Check, the requested service awards, and the requested attorneys' fees and costs.  *Id.*; *see also Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) (same); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA notice that provides "notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class"); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same); *Tobin v. Beer Capitol Distrib. Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same); *Bozak*, 2014 WL 3778211, at *3 (approving FLSA notice providing notice of settlement terms and options facing class).

**III.     The Service Awards to the Named Plaintiff and Opt-In Plaintiff Should Be Approved As Fair and Reasonable.**

Named Plaintiff and Opt In Plaintiff request for approval of service awards in the amount of $6,000.00 and $3,000.00, respectively.  "[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone."  *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09 Civ. 14596, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013); *accord Date v. Sony Elec.,*

*Inc.*, No. 07 Civ. 15474, 2013 WL 3945981, at *13 (E.D. Mich. July 31, 2013) (awarding service award for, *inter alia*, class representative's "responding to discovery and sitting for his deposition") (citation omitted); *see also Griffin v. Flagstar Bancorp. Inc.*, No. 10 Civ. 10610, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit"); *In re Packaged Ice Antitrust Litig.*, No. 98 MDL 1952, 2012 WL 5493613, at *9 (E.D. Mich. Nov. 13, 2012) (substantially same).

Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 (service awards are "well deserved" when class representative spent "time and effort . . . all to the general benefit of the class") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. Oct. 10, 2003) (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the benefit of absent Class members")); *Aros*, 2012 WL 3060470, at *3; *Clark*, 2010 WL 1948198, at *9; *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

Incentive awards are within the discretion of the court. *See Dallas*, 2013 WL 2197624, at *10; *Date*, 2013 WL 3945981, at *13; *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in class action cases and are within the

discretion of the court."; Incentive "awards are particularly appropriate in the employment context."). In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See, e.g.*, *Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, *et al.*, 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013); *see also Dallas*, No. 09 Civ. 14596, 2013 WL 2197624, at *10 (in common fund cases, class representatives "deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (same). Here, Named Plaintiff and Opt In Plaintiff satisfy all 3 factors.

*First*, Named Plaintiff and Opt-In Plaintiff have been involved in this action since the pre-suit investigation that gave rise to this action in 2019. *See* Jones Decl. ¶ 23. They both participated in the pre-suit investigation, provided documents and information crucial to the evaluation of and pursuit of the claims, assisted in preparation for mediation, and settlement negotiations. *Id.* Further, Named Plaintiff responded to Requests for Production and Interrogatories, and underwent an extensive search which yielded over 800 pages of discovery documents for production to Defendant. *Id.* Named Plaintiff and Opt In Plaintiff also participated in preparation for the corporate representative deposition, and review of the documents Defendant produced in discovery. *Id.*; *see Frank*, 228 F.R.D. at 187 (recognizing the important role that class representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents). These actions have resulted in

substantial benefit to the Eligible Class Members, leading to a very favorable settlement to the Eligible Class Members.

**Second**, Named Plaintiff and Opt-In Plaintiff undertook substantial direct and indirect risk. Jones Decl. ¶ 24. The Named Plaintiff agreed to bring the action in her name, and agreed to testify at deposition and at trial. *Id.* Opt-In Plaintiff similarly agreed to be a part plaintiff in the case, was actively involved in the pre-suit investigation, mediation preparation, and document review. *Id.* Additionally, the Opt In Plaintiff agreed to be deposed, and to testify if there was a trial. *Id.* In so doing, Named Plaintiff and Opt-In Plaintiff assumed the risk of retaliation and blacklisting. *Id.*; *see Frank*, 228 F.R.D. at 187 (Incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"*); see also Bozak*, 2014 WL 3778211, at *9 (lead plaintiff "assumed risk of retaliation"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."); *Velez*, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers").[6]

Even where there is not a record of actual retaliation, class representatives merit recognition for assuming the risk of retaliation for the sake of absent class members. *See Sewell*, 2012 WL 1320124, at *14 ("Plaintiffs litigating cases in an employment context face the risk of

---

[6] *See also Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees . . . fac[ed] [sic] potential risks of being blacklisted as 'problem' employees."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.")

subjecting themselves to adverse actions by their employer."); *Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

Although Named Plaintiff and Opt In Plaintiff were no longer employed by Defendant when they joined the lawsuit, they risked retaliation from their current employers and put their ability to secure future employment at risk.  *See Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees . . . fac[ed] potential risks of being blacklisted as 'problem' employees."); *Guippone*, 2011 WL 5148650, at *7 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.").  Service awards "provide an incentive to seek enforcement of the law despite these dangers."  *Parker*, 2010 WL 532960, at *1.

*Third*, Named Plaintiff and Opt-In Plaintiff spent a significant amount of time and effort in pursing this litigation on behalf of the Eligible Class Members.  This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, the time and effort they spent in assist in the preparation and review of the complaint, retrieving documents to respond to discovery requests, responding to Defendant's document requests, reviewing documents produced by Defendant, and deposition preparation.  Jones Decl. ¶ 23; *Date*, 2013 WL 3945981, at *13; *Bert*, 2008 WL 4693747, at *3.

18

Additionally, the amount of the requested service awards is reasonable and consistent with awards that have been granted in employment class and collective actions.   In FLSA cases in this Circuit and elsewhere, courts consistently approve service awards.  *See Halleen v. Belk, Inc.*, No. 16-cv-00055, 2018 U.S. Dist. LEXIS 214015 (E.D. Tx. December 20, 2018) (approving service award to named plaintiffs in the amount of $7,500, and $1,000.00 to Opt In plaintiffs who testified in depositions); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each class representative); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff).

**IV.    Attorneys' Fees and Costs Should be Approved as Fair and Reasonable.**

The FLSA provides for reasonable attorneys' fees and costs.  *See* 29 U.S.C. § 216(b) ("The court in [an action to recover under FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").  *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984).  "The purpose of the FLSA attorney's fees provision is to 'insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'"  *Farmer v. Ottawa Cnty.*, 211 F.3d 1268, 2000 WL 420698, at *7 (6th Cir. 2000) ) (citing *United Slate*, 732 F.2d at 502); *see Wilson v. D & N Masonry, Inc.*, No. 12 Civ. 922, 2014 WL 1789136, at *1 (S.D. Ohio May 5, 2014) ("The purpose of the FLSA attorney fees provision" is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.") (citing district court citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)); *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) ("The purpose of

allowing an award of attorney's fees in FLSA cases is to encourage employees to vindicate what Congress considers an important right to receive wages designed to ensure a minimum standard of living."); *see also Bozak*, 2014 WL 3778211, at *6 (S.D.N.Y. Jan. 7, 2010) ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (citation omitted).

Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. *See Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) ("The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.") (citation and internal quotation marks omitted); *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979) (observing that "broad remedial purpose" of FLSA should be given "liberal construction"); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (discussing "society's stake in rewarding attorneys who produce [] benefits in order to maintain an incentive to others"); *Bozak*, 2014 WL 3778211, at *6 (collecting cases).

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Turner v. Perry Twp., Ohio*, No. 03 Civ. 455, 2005 WL 6573784, at *3 (Dec. 30, 2005) ("[T]he Sixth Circuit has emphasized the private attorney general theory of fee recovery: the importance of bringing [FLSA] cases, even if only nominal damages, are recovered to vindicate employee rights and Congressional policy"); *see also Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011); *deMunecas v.*

*Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010); *Sand*, 2010 WL 69359, at *3 (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel").

Here, Plaintiffs' Counsel negotiated its attorneys' fees ***not*** based on a percentage of the fund, but rather fees and costs were separately negotiated based on Plaintiffs' Counsel's lodestar. Jones Decl. at ¶ 25.   Because Defendant maintained records of the hours the ROMs worked, the parties were able to determine the amount of alleged damages owed to the ROMs.  *Id.* Noting that Plaintiff's Counsel's attorneys' fees and costs were significant after a year and a half of investigation and litigation, the parties first resolved the damages owed to the ROMs, and then separately resolved the attorneys' fees and costs sought by Plaintiffs' Counsel.  *Id.*

The fee agreed to by the parties is less than Plaintiffs' Counsel's "lodestar" fees.  "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Black v. SettlePou, PC*, 732 F.3d 492, 502 (5th Cir. 2013) (citations omitted).  There is a strong presumption that the lodestar is a reasonable amount.  *Perdue v. Kenny A.*, 559 U.S. 542, 552, 130 S. Ct. 1662, 176 L. Ed 2d 494 (2010).  After the Court determines the lodestar, the Court must determine whether it should be adjusted based on the circumstances of the case and the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1988).[7]

---

[7] The factors set forth in *Johnson* are: (1) the time and labor required, [*4] (2) the novelty and difficulty of the questions, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation,

The application of the *Johnson* factors to this case supports the reasonableness of the attorneys' fees sought in this case.

Plaintiffs' counsel—experienced labor and employment lawyers—dedicated a substantial amount of effort, time and labor to this case. Jones Decl ¶¶ 5, 6; Bonanni Decl ¶¶ 6, 8. Plaintiffs' Counsel began their investigation of this action in mid 2019, which was followed by mediation in December 2019. The parties continued settlement negotiations for more than 10 months, until this case was filed in November 2020. Defendant has denied liability from the outset, and the parties have faced numerous hurdles along the way. Defendant strongly disputed liability, asserted multiple defenses throughout the litigation, and the parties engaged in various discovery disputes, including one that had to be heard by Magistrate Judge Ivy. The parties also served interrogatories and requests for production. Throughout the discovery process, over 7,000 pages of documents were exchanged.

The Parties **separately negotiated** Plaintiffs' Counsel's attorneys' fees of $80,000.00, and $6,000.00 in out-of-pocket costs. *Id.* at ¶ 26. Thus, the Court's award of attorneys' fees and costs will not reduce, diminish or otherwise compromise the $105,000.00 in separate payments to the Eligible Class Members. *Id.* Rather, the attorneys' fees and costs are above and beyond the amount to be paid to the Eligible Class Members. *See Daniels v. Prod. Mgmt. Indus., LLC*, 2018 U.S. Dist. LEXIS 76933, *10-11 (W.D. La. April 20, 2018) (approving attorney fees in FLSA case as reasonable where they are paid separate and apart from the damages to plaintiffs and do not otherwise reduce the payment to plaintiffs).

The total lodestar to date for Plaintiffs' Counsel for representing the Eligible Class Members in this case is $137,660.00 for 266.6 hours of attorney and paralegal time spent

---

and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

prosecuting this case.  Jones Decl. ¶ 27; Bonanni Decl ¶ 13.  The following chart is a summary of the time and effort invested by Plaintiffs' Counsel:

**Shavitz Law Group, P.A.**

| Timekeeper | Rates | Hours | Totals |
|---|---|---|---|
| Gregg Shavitz | $700.00 | 16.4 | $11,480.00 |
| Camar R. Jones | $600.00 | 172.0 | $103,200.00 |
| Paralegals | $150.00 | 53.2 | $7,980.00 |
| **Totals** | | **241.6** | **$122,660.00** |

**Pitt McGhee Palmer Bonanni & Rivers, P.C.**

| Timekeeper | Rates | Hours | Totals |
|---|---|---|---|
| Megan Bonanni | $600.00 | 25.00 | $15,000.00 |
| **Totals** | | **25.0** | **$15,000.00** |

This reflects the time actually spent, in the exercise of reasonable judgment by the lawyers and staff involved and is reflected in the detailed time records for each of the firms.  Jones Decl. ¶ 27.  The work undertaken represents the work addressed above in connection with the investigation, mediation preparation, mediation, filing of the lawsuit, discovery, and negotiating and effectuating the settlement.  *Id.* ¶ 28.  As outlined above, the time and labor required in the prosecution of this case was substantial, considering the history of this case.  *Id.*

The hourly rates Plaintiffs' counsel seeks are reasonable considering Plaintiffs' Counsel's expertise and familiarity and experience in FLSA collective action litigation. Jones Decl. ¶¶ 5, 6, 29; Bonanni Decl ¶¶ 4-8, 16, 18.  Accordingly, Plaintiffs' request for attorneys' fees and costs should be approved.  Detailed, reasonable, and necessary billing entries will be made available to the Court *in camera* should the Court so request.

Plaintiffs' Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result.  Jones Decl. ¶ 30.  Plaintiffs' counsel's request for payment of fees in the amount of $80,000.00 represents a negative multiplier

of .58.  *Id.*  Given the risks presented by this lawsuit and the results obtained, the fee requested is decidedly reasonable. *Id.* Counsel also expects that there will be significant future time spent by Plaintiffs' counsel in administering the claims process and the settlement, coordinating mailing of the settlement checks, re-mailing returned checks, and explaining the terms of the settlement to Eligible Class Members, bringing the multiplier even further below 1.  *Id.*  Plaintiffs' Counsel has a continuing obligation to represent the collective during the settlement approval process and the disbursement phase. *Id.*

Plaintiffs' Counsel also has incurred $7,293.81 in out-of-pocket costs prosecuting this case, including costs for electronic research, court filing fees, service of process, postage and courier fees, travel, and Plaintiffs' portion of the mediator's fees.  Jones Decl. ¶ 31; Bonanni Decl. ¶ 27; *see Griffin*, 2013 WL 6511860, at *9 (approving payment of costs when "document by firm and by category of expense . . . and appear reasonable"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535 (approving costs as "type routinely billed by attorneys to paying clients in similar cases"). Plaintiffs' Counsel seeks reimbursement of out-of-pocket expenses in the amount of $6,000.00 in satisfaction of the $7,293.81 actually incurred.  Jones Decl. ¶ 31.  Like the attorneys' fee award, the amount sought is less than the costs and expenses actually incurred and anticipated in this litigation.  *Id*.  Plaintiffs' Counsel's actual out-of-pocket costs and expenses are summarized in the chart below:

**SLG**

| Expense | Amount |
|---|---|
| Court Admission application for Camar R. Jones, Esq. (and Certificate of Good Standing from Florida Bar) | $327.00 |
| Service of Process | $235.00 |
| Travel (including flights, ground transportation, parking and mileage) for Mediation | $278.70 |

| | |
|---|---|
| Hotel accommodations for Mediation | $334.72 |
| Postage/Courier | $215.79 |
| Plaintiffs' Portion of Mediator Fee – ADR Systems – Hon. Stuart Nudelman (Ret.) | $5,501.00 |
| **Total** | **$6,892.21** |

**Pitt McGehee**

| Expense | Amount |
|---|---|
| Case filing fee | 401.60 |
| **Total** | **$401.60** |

The costs described are accurate regarding all the expenses incurred, and constitute hard, out-of-pocket monetary expenses from the beginning of the case. Defendant does not oppose the amount of attorneys' fees and costs as set forth in the Agreement. *See Bozak*, 2014 WL 3778211, at *7.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the settlement set forth in the Settlement Agreement; (2) approving the proposed Settlement Notice and direct distribution of the Settlement Checks; (3) approving service awards of $6,000.00 to Named Plaintiff Pieber, and $3,000.00 to Opt In Plaintiff Caudell for their service to the Eligible Class Members; (4) approving Plaintiffs' request for $80,000.00 in attorneys' fees and $6,000.00 in costs and litigation expenses; (5) incorporating the terms of the Settlement Agreement; and (6) entering judgment in this matter.

Respectfully submitted,

| **SHAVITZ LAW GROUP, P.A.** | **GORDON REES SCULLY MANSUKHANI, LLP** |
|---|---|
| /s/ Camar R. Jones | |
| Camar R. Jones, Esq. | |
| 981 Yamato Road, Suite 285 | By: /s/ James B. Hiller _____ |
| Boca Raton, Florida 33431 | James B. Hiller - MI Bar #P82636 |
| Telephone: (561) 447-8888 | One North Franklin, Suite 800 |
| Facsimile: (561) 447-8831 | Chicago, IL 60606 |
| cjones@shavitzlaw.com | Telephone: (312) 980-6773 |
| | Facsimile: (312) 565-6511 |
| Megan A. Bonanni | jhiller@grsm.com |
| **PITT, MCGEHEE, PALMER,** | ***Attorneys for Defendant SVS Vision, Inc.*** |
| **BONANNI &** | |
| **RIVERS, P.C.** | |
| 117 West 4th Street Suite 200 | |
| Royal Oak, MI 48067 | |
| Telephone: (248) 939-5081 | |
| mbonanni@pittlawpc.com | |
| | |
| ***Attorneys for Plaintiff and the Putative Collective*** | |