## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

-----------------------------------------------------------X

DONNA PIEBER, on behalf of herself and
all others similarly situated,

                    Plaintiffs,

           -against-

SVS VISION, INC.

                  Defendant.

**Case No.: 20-cv-13051-LVP-CI**

-----------------------------------------------------------X

### DECLARATION OF CAMAR R. JONES IN SUPPORT OF
### MOTION FOR APPROVAL OF SETTLEMENT

I, Camar R. Jones, declare as follows:

1.      I am an attorney at Shavitz Law Group, P.A. ("SLG"). SLG is an 8-attorney firm based in Boca Raton, Florida that focuses on representing workers as plaintiffs in employment-related matters, including claims based upon individual and class-wide violations of state and federal wage and hour laws. Along with Pitt McGehee Palmer Bonanni & Rivers, P.C. ("Pitt McGehee")[1], we serve as counsel for the Named Plaintiff and the Opt In Plaintiff (collectively "Plaintiffs").

2.      I make these statements based on personal knowledge and would so testify if called as a witness.

**Firm Background**

3.      For the past 21 years, SLG has focused on representing workers in wage and hour matters.

---

[1] SLG and Pitt McGehee will be referred to collectively herein as "Plaintiffs' Counsel".

4.      My background and those of other SLG attorneys who worked on this matter are below.

5.      I have been an attorney with SLG since 2009. I have over 17 years' experience litigating employment matters under state and federal anti-discrimination and wage and hour laws. Prior to joining SLG, I worked as an associate attorney with the Fort Lauderdale labor and employment boutique, The Amlong Firm, representing plaintiffs in discrimination, unpaid wages and FLSA claims throughout South Florida, and with The Kopelowitz Ostrow Firm, PA, where I represented plaintiffs in discrimination, unpaid wages, FLSA and FMLA claims. Additionally, I have counseled employers on compliance with the various state and federal labor and employment laws, defended employers in claims filed by employees, and represented employers in enforcing non-compete and trade secret agreements. I currently represent plaintiffs in individual and collective actions in Federal Courts throughout the country. I received my Juris Doctor degree from Stetson University College of Law in 2003. I am admitted to the Florida Bar, the U.S. District Courts for the Southern, Middle, and Northern Districts of Florida, and the District of Colorado, as well as the Eleventh Circuit Court of Appeals. I am also AV-Preeminent rated by Martindale-Hubble, and have been named a "Rising Star" or "SuperLawyer" every year since 2011.

6.      SLG has significant experience prosecuting wage and hour class and collective actions such as this one.  In recent years, the firm has served or been appointed as class counsel or co-class counsel in the following cases, among others:

*Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712 (S.D.N.Y.);

*Amador v. Morgan Stanley & Co, LLC*, No. 11 Civ. 4326 (S.D.N.Y.);

*Ayala v. GEICO*, No. 18 Civ. 03583 (S.D.N.Y.);

*Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836 (S.D.N.Y.);

*Besic v. Byline Bank, Inc.*, et al., No. 15 C 8003 (N.D. Ill.);

*Biscoe-Grey v. Sears Holding Corp.*, No. 09-81408-Civ-Marra / Johnson (S.D. Fla.);

*Blum, et al. v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 1636 (S.D.N.Y.);

*Briggs v. PNC Fin. Servs. Gr.*, No. 15 Civ. 10447 (N.D. Ill.);

*Bucceri v. Cumberland Farms, Inc.*, No. 15-cv-13955 (D. Mass.);

*Calabresi  v. TD Bank, N.A.*, No. 13 Civ. 0637 (E.D.N.Y.);

*Capalupi v. People's United Financial, Inc.*, No. 15 Civ. 5247 (E.D.N.Y.);

*Cerrone v. KB Home Florida, LLC et al.*, No. 07-14402-Civ (S.D. Fla.);

*Ciomcia v. Beall's Inc.*, Case No. 2:17-cv-14444 (S.D. Fla.);

*Clem v. KeyBank, N.A.*, No. 13 Civ. 789 (S.D.N.Y.);

*Danley v. Office Depot, Inc.*, et al., No. 9:14-cv-81469 (S.D. Fla.);

*DeVries v. Morgan Stanley & Co. LLC*, No. 12-CV-81223 (S.D. Fla.);

*Fiore v. Goodyear Tire & Rubber Co.*, No. 2:09-CV-843-FtM-29SPC (M.D. Fla.);

*Heitzenrater v. OfficeMax, Inc.*, No. 12 Civ. 900S (W.D.N.Y.);

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (S.D.N.Y.);

*Hirst, et al. v. M&T Bank, et al.*, No. 511428/2015 (N.Y. Sup. Ct.);

*Hosier v. Mattress Firm, Inc.*, No. 10 Civ. 294 (M.D. Fla.);

*Juric v. Dick's Sporting Goods, Inc.*, No. 20-cv-651 (W.D. Pa.);

*Kampfer v. Fifth Third Bank*, No. 14-cv-02849 (N.D. Ohio);

*Koszyk v. Country Fin.*, No. 16 Civ. 3571 (N.D. Ill.);

*Krokos v. Fresh Market, Inc.*, No. 16-cv-12082 (D. Mass.);

*Kulauzovic v. Citibank, N.A.*, No. 507538/2018 (N.Y. Sup. Ct.);

*Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219 (D. Mass.);

*Magee v. Francesca's Holdings Corp.*, No. 1:17-cv-00565 (D.N.J.);

*McCue v. MB Fin., Inc.*, No. 15 Civ. 988 (N.D. Ill.);

*Nash v. CVS Caremark Corp.*, No. 09 Civ. 79 (D.R.I.);

*Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030 (S.D.N.Y)

*Prena v. BMO Financial Corp., et al.*, No. 1:14-cv-09175 (N.D. Ill.);

*Przytula v. Bed Bath & Beyond, Inc.*, No. 17 Civ. 5124 (N.D. Ill.);

*Puglisi v. TD Bank*, N.A., No. 13 Civ. 637 (E.D.N.Y.);

*Raley v. Kohl's Corporation*, et al., No. 8:09-cv-2340 (M.D. Fla.);

*Reiburn v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 2960 (S.D.N.Y.);

*Robbins v. Abercrombie & Fitch Co.*, No. 15 Civ. 6187 (W.D.N.Y.);

*Roberts v. TJX Cos.*, No. 13 Civ. 13142 (D. Mass.);

*Romero v. Florida Power & Light Company*, No. 6:09-cv-1401-Orl-35 (M.D. Fla.);

*Saliford v. Regions Financial Corp. et al.*, No. 10-610310-CIV (S.D. Fla.);

*Simpkins v. Pulte Home Corp.*, No. 6:08-cv-00130 (M.D. Fla.);

*Snodgrass v. Bob Evans Farms, Inc.*, No. 12-cv-768 (S.D. Ohio);

*Stallard v. Fifth Third Bank, et al*, No. 2:12-cv-01092 (W.D. Pa.);

*Waggoner v. U.S. Bancorp*, No. 14-cv-1626 (N.D. Ohio);

*Watson v. BMO Financial Corp.*, No. 15-cv-11881 (E.D. Ill.);

*Wright v. Flagstar Bank FSB*, No. 13 Civ. 15069 (E.D. Mich.)

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (S.D.N.Y.);

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531 (S.D.N.Y.);

*Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230 (N.D. Ill.)

## **Overview of Investigation, Litigation and Settlement Negotiations**

7.      Before the initiation of this action, Named Plaintiff Donna Pieber, Opt In Plaintiff Tylene Caudell and SLG conducted a thorough investigation into the merits of the potential claims and defenses.  SLG focused the investigation and legal research on the underlying merits of the Retail Office Managers' (ROMs') claims, the damages to which they were entitled, and the propriety of collective action certification.  SLG obtained and reviewed documents from Named Plaintiff Pieber and Opt-In Plaintiff Caudell, including job descriptions, pay records, standard operating procedures, work schedules, performance evaluations, and correspondence with supervisors and colleagues.  SLG also conducted in-depth interviews of Named Plaintiff Pieber, Opt-In Plaintiff Caudell, and other former ROMs.

8.      After completing their investigation, in March 2019, SLG, notified SVS of the claims of the collective of ROMs, and invited SVS to explore a potential pre-litigation resolution of the ROMs' claims. The parties subsequently agreed to explore pre-suit mediation.  To

facilitate mediation, SVS provided the following data for the 36 ROMs who were employed by Defendant during Relevant Period[2]: (a) the number of weeks during which ROMs were employed; (b) the salaries paid to each ROM; and (c) time record summaries outlining the hours ROMs worked each week (because ROMS were required to record the hours they worked although they were not paid overtime). This data was used to prepare a damage model reflecting the potential overtime owed to the Eligible Class Members, including assumptions for the number of hours Eligible Class Members worked each week, Defendant's potential exposure within the 2 and 3 year statutes of limitations, and potential exposure for liquidated damages. Additionally, the parties entered into a tolling agreement effective April 15, 2019 preserving the statute of limitations relating to the wage claims of the Named Plaintiff and the putative collective of ROMs. On December 11, 2019, the parties participated in a full-day mediation conference facilitated by retired judge Honorable Stuart Nudelman in Chicago, Illinois.

9.      The parties were unable to resolve the claims at mediation. However, the parties continued to engage in informal settlement negotiations for 10 months following mediation. The parties were ultimately unable to resolve the claims presuit. As a result, Plaintiff filed this action for unpaid overtime on November 16, 2020 through her counsel, SLG and Pitt McGhee Palmer Bonanni & Rivers, P.C. ("Pitt McGhee"). ECF No. 1.

10.     In her Complaint, Named Plaintiff Pieber, alleged that SVS violated the FLSA by misclassifying her and other salaried ROMs as exempt from the overtime provisions of the FLSA. Named Plaintiff Pieber asserted her claims on behalf of herself and all other ROMs who

---

[2] The data was limited to 36 ROMs because all other ROMs employed by Defendant signed arbitration agreements which contained class and collective action waivers. On approximately March 15, 2019, Defendant implemented an "alternative dispute resolution" ("ADR") program, which prevented ROMs employed on or after that date from participating in a class or collective action. The 36 ROMs at issue are all former employees of Defendant.

worked for SVS in United States.  In addition, Opt In Plaintiff Caudell filed a her Consent to Join Form pursuant to 29 U.S.C. § 216(b) to become a party to the lawsuit.  *See* ECF No. 1-1. Defendant filed its Answer on January 28, 2021.  *See* ECF No. 5.

11.    This Court entered a Scheduling Order on March 4, 2021, which required Named Plaintiff to file her Motion for Conditional Certification pursuant to FLSA § 216(b) by July 2, 2021.  The parties proceeded with discovery.  Defendant served requests for production of documents and interrogatories on Named Plaintiff Pieber, to which she responded, and produced over 800 pages of responsive documents.

12.    Named Plaintiff and Opt In Plaintiff also served requests for production and interrogatories on Defendant.  In response, Defendant produced over 7,000 pages of discovery documents, inclusive of personnel files, payroll documents, job descriptions, standard operating procedures, company policies, e-mail communications, and documents relating to Defendant's evaluation of the ROM position, and decision to classify ROMs as exempt from overtime.  The parties also scheduled and prepared for the depositions of the Named Plaintiff, and Defendant's Corporate Representatives.

13.    As the parties proceeded with discovery and document review, and prepared for the depositions, the parties agreed to re-engage in settlement discussions based on their evaluation of the extensive discovery completed at that time.  From the discussions, the parties reached a settlement, the terms of which are outlined below, and in the parties' Settlement Agreement, which has been fully executed by the parties

**Settlement**

14.    The total amount of the settlement is $200,000.00.  The total settlement covers: (a) the Eligible Class Members' awards totaling $105,000.00; (b) service awards to the Named

Plaintiff and Opt-In Plaintiff, in the amounts of $6,000.00 and $3,000.00 respectively; (c) attorneys' fees in the amount of $80,000.00; and (d) costs in the amount of $6,000.00. The settlement is intended to compensate 36 Eligible Class Members who were formerly employed by SVS as ROMs during the Relevant Period who did not execute arbitration agreements. The Eligible Class Members are listed in Attachment 1 to the Settlement Agreement, which also includes the settlement amounts they will be paid based on the allocation formula below.

15.     No later than 40 days after the Court issues an Order approving the settlement ("Payment Date"), SVS will have the Eligible Class Members' Settlement Checks delivered to Plaintiffs' Counsel, along with the payments for the service awards, and attorneys' fees and costs.    Before delivering the checks, SVS will perform a "skip trace" to obtain the correct address of each Eligible Class Member, and provide the Last Known Mailing Addresses for each of the Eligible Class Members when delivering the Settlement Checks to Plaintiff's Counsel.

16.     Plaintiffs' Counsel will mail Settlement Notices and Settlement Checks to the Eligible Class Members, *via* First Class United States mail, no later than 2 business days after receiving the Settlement Checks from SVS.  The Settlement Notice will advise the Eligible Class Members of the Settlement and will explain how their settlement shares were determined.  The Notice will also advise Eligible Class Members that by negotiating, signing cashing, or depositing the settlement check, they will provide Defendant with a release of their overtime misclassification wage and hour claims under the FLSA and applicable state wage and hour laws for the time they worked as salaried, exempt-classified ROMs during the Relevant Period.  The back of the settlement checks will also contain the release language.  Settlement Checks issued to Eligible Class Members will expire 180 days following their issuance ("Acceptance Period").

17.     Every 30 days, Defendant will provide a list to Plaintiffs' Counsel with the names of the individuals who have cashed Settlement Checks *and* those who have not cashed Settlement Checks up to that date.   If a Settlement Check has not been cashed by any Eligible Class Member within 90 days after it is mailed, Plaintiffs' Counsel shall send a letter or postcard reminding them of the expiration of the Acceptance Period.   After the Acceptance Period expires, all uncashed Settlement Checks will be void, and SVS will issue a stop payment order on such checks.

18.     In the event an Eligible Class Member reports a lost or destroyed Settlement Check within the Acceptance Period, Defendant will issue a stop payment order on the original check and issue a new check within 14 days of notification of the check being lost or destroyed. The reissued check shall be valid for 180 days from re-issuance. For any Settlement Check that is returned by the United States Postal Service as undeliverable, Defendant shall perform another skip trace to obtain a correct address, and Plaintiffs' Counsel will re-mail the check within 2 days after being provided an updated address.

19.     Eligible Class Members who participate in the settlement by negotiating their settlement check ("Participating Settlement Class Members") will release their overtime misclassification wage and hour claims under the FLSA and applicable state wage and hour laws during the time they worked as salaried, exempt-classified ROMs, including claims for liquidated damages, attorneys' fees, costs and expenses relating to the alleged violation during the Relevant Period.   Eligible Class Members who do not negotiate a settlement check will not release any claims.

20.     Eligible Class Members will be eligible for a Settlement Check pursuant to an allocation formula based on the number of weeks they worked during the Relevant Period.   Each

Eligible Workweek that an Eligible Class Member was employed between March 16, 2017 and March 15, 2019 (2-year statute of limitations) will receive 1 full point of credit, and each Eligible Workweek an Eligible Class Member was employed between April 15, 2016 and March 15, 2017 (the third year of the statute of limitations which would require proof of willfulness in litigation) will receive 1/3 point of credit.    To calculate each Eligible Class Member's proportionate share: (a) all points for all Eligible Class Members will be added together to obtain the "Denominator"; (b) the number of points for each Eligible Class Member will be divided by the Denominator to obtain each Eligible Class Member's "Portion of the Net Amount"; and (c) each Eligible Class Member's Portion of the Net Amount will then be multiplied by the Net Amount to obtain their Settlement Check amount. Any portion of the Net Amount that is unclaimed by Eligible Class Members who fail to cash their Settlement Check during the Acceptance Period will be retained by Defendant.

21.     The time records that SVS produced for the ROMs in preparation for mediation reflected that ROMs worked an average of 4.9 overtime hours each week.  The Net Amount will compensate each Eligible Class Member for approximately 4.9 hours of overtime each week within the 3-year statute of limitations on a half-time basis.   Eligible Class Members will also receive compensation for an amount equal to the alleged overtime compensation as liquidated damages *in addition to* the recovery for overtime.

22.     The average *net* amount (clear of any attorneys' fees, costs, and service awards) payable to each Plaintiff is $2,916.66.  This compares favorably to retail assistant manager cases, which are less challenging and complex than store manager-type claims such the instant action.

**Service Awards**

23. Plaintiff requests approval of service awards of $6,000.00 to the Named Plaintiff and $3,000.00 to the Opt in Plaintiff. The Service Awards that they request are reasonable given the significant contributions they made to advance the prosecution and resolution of the lawsuit. Named Plaintiff and Opt-In Plaintiff have been involved in this action since the pre-suit investigation that gave rise to this action in 2019. They both participated in the pre-suit investigation, provided documents and information crucial to the evaluation of and pursuit of the claims, assisted in preparation for mediation, and settlement negotiations. Further, Named Plaintiff responded to Requests for Production and Interrogatories, and underwent an extensive search which yielded over 800 pages of discovery documents for production to Defendant. Named Plaintiff and Opt In Plaintiff also participated in preparation for the corporate representative deposition, and review of the documents Defendant produced in discovery. These actions have resulted in substantial benefit to the Eligible Class Members, leading to a very favorable settlement to the Eligible Class Members.

24. Further, Named Plaintiff and Opt-In Plaintiff undertook substantial direct and indirect risk. The Named Plaintiff agreed to bring the action in her name, and agreed to testify at deposition and at trial. Opt-In Plaintiff similarly agreed to be a party plaintiff in the case, was actively involved in the pre-suit investigation, mediation preparation, and document review. Additionally, the Opt In Plaintiff agreed to be deposed, and to testify if there was a trial. In so doing, Named Plaintiff and Opt-In Plaintiff assumed the risk of retaliation and blacklisting.

**Attorneys' Fees and Costs**

25. Plaintiffs' Counsel negotiated its attorneys' fees not based on a percentage of the fund, but rather fees and costs were separately negotiated based on Plaintiffs' Counsel's lodestar. Because Defendant maintained records of the hours the ROMs worked, the parties were able to

determine the amount of alleged damages owed to the ROMs.  Noting that Plaintiff's Counsel's

attorneys' fees and costs were significant after a year and a half of investigation and litigation,

the parties first resolved the damages owed to the ROMs, and then separately resolved the

attorneys' fees and costs sought by Plaintiffs' Counsel.

26.     The fees and costs agreed to by the parties is less than Plaintiffs' Counsel's

"lodestar" fees.   The Parties *separately negotiated* Plaintiffs' Counsel's attorneys' fees of

$80,000.00, and $6,000.00 in out-of-pocket costs.  Thus, the Court's award of attorneys' fees and

costs will not reduce, diminish or otherwise compromise the $105,000.00 in separate payments

to the Eligible Class Members.  Rather, the attorneys' fees and costs are above and beyond the

amount to be paid to the Eligible Class Members.

27.     The total lodestar to date for Plaintiffs' Counsel for representing the Eligible

Class Members in this case is $137,660.00 for 266.6 hours of attorney and paralegal time spent

prosecuting this case.  The following chart is a summary of the time and effort invested by

Plaintiffs' Counsel:

Shavitz Law Group, P.A.

| Timekeeper | Rates | Hours | Totals |
|---|---|---|---|
| Gregg Shavitz | $700.00 | 16.4 | $11,480.00 |
| Camar R. Jones | $600.00 | 172.0 | $103,200.00 |
| Paralegals | $150.00 | 53.2 | $7,980.00 |
| **Totals** | | **241.6** | **$122,660.00** |

Pitt McGhee Palmer Bonanni & Rivers, P.C.

| Timekeeper | Rates | Hours | Totals |
|---|---|---|---|
| Megan Bonanni | $600.00 | 25.00 | $15,000.00 |
| **Totals** | | **25.0** | **$15,000.00** |

28.     This reflects the time actually spent, in the exercise of reasonable judgment by the

lawyers and staff involved and is reflected in the detailed time records for each of the firms.  The

work undertaken represents the work addressed above in connection with the investigation, mediation preparation, mediation, filing of the lawsuit, discovery, and negotiating and effectuating the settlement.  As outlined above, the time and labor required in the prosecution of this case was substantial, considering the history of this case.

29.     The hourly rates Plaintiffs' counsel seeks are reasonable considering Plaintiffs' Counsel's expertise and familiarity and experience in FLSA collective action litigation. Accordingly, Plaintiffs' request for attorneys' fees and costs should be approved.  Detailed, reasonable, and necessary billing entries will be made available to the Court *in camera* should the Court so request.

30.     Plaintiffs' Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result.  Plaintiffs' counsel's request for payment of fees in the amount of $80,000.00 represents a negative multiplier of .58.  Given the risks presented by this lawsuit and the results obtained, the fee requested is decidedly reasonable.  Counsel also expects that there will be significant future time spent by Plaintiffs' counsel in administering the claims process and the settlement, coordinating mailing of the settlement checks, re-mailing returned checks, and explaining the terms of the settlement to Eligible Class Members,  bringing the multiplier even further below 1.  Plaintiffs' Counsel has a continuing obligation to represent the collective during the settlement approval process and the disbursement phase.

31.     Plaintiffs' Counsel also has incurred $7,293.81 in out of pocket costs prosecuting this case, including costs for electronic research, court filing fees, service of process, postage and courier fees, travel, and Plaintiffs' portion of the mediator's fees.   Plaintiffs' Counsel seeks reimbursement of out-of-pocket expenses in the amount of $6,000.00 in satisfaction of the

$7,293.81 actually incurred. Like the attorneys' fee award, the amount sought is less than the costs and expenses actually incurred and anticipated in this litigation. Plaintiffs' Counsel's actual out-of-pocket costs and expenses are summarized in the chart below:

**SLG**

| Expense | Amount |
|---|---|
| Court Admission application for Camar R. Jones, Esq. (and Certificate of Good Standing from Florida Bar) | $327.00 |
| Service of Process | $235.00 |
| Travel (including flights, ground transportation, parking and mileage) for Mediation | $278.70 |
| Hotel accommodations for Mediation | $334.72 |
| Postage/Courier | $215.79 |
| Plaintiffs' Portion of Mediator Fee – ADR Systems – Hon. Stuart Nudelman (Ret.) | $5,501.00 |
| **Total** | **$6,892.21** |

**Pitt McGhee Palmer Bonanni & Rivers, P.C.**

| Expense | Amount |
|---|---|
| Case filing fee | 401.60 |
| **Total** | **$401.60** |

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and

correct.

Dated: September 24, 2021
       Boca Raton, Florida

                              Respectfully submitted,

                              **SHAVITZ LAW GROUP, P.A.**

                              Camar R. Jones
                              **Shavitz Law Group, P.A.**
                              1515 S. Federal Highway, Suite 404
                              Boca Raton, Florida 33432
                              Telephone: (561) 447-8888
                              Facsimile:  (561) 447-8831



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

----------------------------------------------------------------X

DONNA PIEBER, on behalf of herself and    :
all others similarly situated,    :
   :   **Case No.: 20-cv-13051-LVP-CI**
    Plaintiffs,    :
   :
    -against-    :
   :
SVS VISION, INC.    :
   :
    Defendant.    :

----------------------------------------------------------------X

## JOINT STIPULATION OF SETTLEMENT

This Joint Stipulation of Settlement (the "Agreement") is entered into by and between DONNA PIEBER ("Named Plaintiff") and Defendant, SVS VISION, INC. ("Defendant" or "SVS") (together with Named Plaintiff, the "Parties").

## RECITALS

**WHEREAS**, the Named Plaintiff filed her Collective Action Complaint ("Complaint") asserting claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for the alleged failure to pay overtime compensation to Named Plaintiff and a putative collective of exempt-classified, salaried Retail Office Managers ("ROMs") (the "Litigation"); and

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims as set forth in Section 4 of this Agreement, including all claims asserted in the Litigation and those claims that could have been so asserted under the FLSA or state law based on the allegations in the Complaint relating to the non-payment of overtime to individuals employed as salaried, exempt-classified ROMs at SVS Vision stores in the United States during the relevant period; and

**WHEREAS**, SVS denies all of the allegations made by Plaintiff in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against SVS in the Litigation, conducted interviews with Named Plaintiff and Opt In Plaintiff (defined below), obtained and reviewed voluminous discovery documents relating to SVS' compensation policies and practices, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the

Page **1** of **11**

possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions.

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "**Acceptance Period**" means the one hundred eighty (180)-day period from the date of issuance of the Settlement Checks to Eligible Class Members during which they may sign and deposit, cash or otherwise negotiate a Settlement Check to become a Participating Class Member.  The front of each Settlement Check will state that the check is valid for a period of one hundred eight (180) days after issuance.

1.2 "**Complaint**" means the Complaint [D.E. 1] dated November 16, 2020 filed by Named Plaintiff in this Litigation.

1.3 "**Court**" means the United States District Court for the Eastern District of Michigan.

1.4 "**Defendant**" or "**SVS**" means SVS Vision, Inc.

1.5 "**Defendant's Counsel**" means Gordon Rees Scully Mansukhani, LLP.

1.6 "**Eligible Class Member**" means the thirty-six (36) former ROMs employed by SVS in the United States during the Relevant Period who did not execute arbitration agreements (listed in **Exhibit 1**).

1.7 "**Eligible Work Week**" means any and all weeks during which an Eligible Class Member performed any compensable work for SVS Vision as a salaried, exempt-classified ROM during the Relevant Period.

1.8 "**Employer Payroll Taxes**" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.9 "**Effective Date**" shall mean the thirtieth (30th) day after the Court's issuance of the Approval Order.

1.10 "**Gross Payment**" means Two Hundred Thousand and 00/100 Dollars ($200,000.00), which is the maximum amount that Defendant has agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to the Eligible Class Members; and any Court-approved

Service Awards.  The Gross Payment does not include the Employer Payroll Taxes, which will be paid separately by Defendant.

**1.11** "**Last Known Address**" or **"Last Known Addresses"** means the most recently recorded personal mailing address for an Eligible Class Member as shown in Defendant's records, or as determined from the skip trace performed at Defendant's expense before the settlement checks are issued.

**1.12** "**Litigation**" or the "Lawsuit" or the "Action" means the lawsuit entitled *Pieber v. SVS Vision, Inc., et. al.,* No. 20-cv-13051-LVP-CI in the United States District Court for the Eastern District of Michigan.

**1.13** "**Named Plaintiff**" means DONNA PIEBER.

**1.14** "**Net Amount**" means the remainder of the Gross Payment after deductions, payments, or allocations for: (a) Court-approved attorneys' fees and costs for Plaintiffs' Counsel; and (b) any Court-approved Service Awards.

**1.15** **"Opt In Plaintiff"** means TYLENE CAUDELL.

**1.16** "**Order Granting Approval of Settlement**" or "**Approval Order**" means an order approved and entered by the Court, which gives approval to the Settlement, in a form substantially similar to the Proposed Approval Order, attached hereto as **Exhibit 2**.

**1.17** "**Participating Class Members**" means each Eligible Class Member who timely signs, deposits, or otherwise negotiates a Settlement Check.

**1.18** "**Parties**" collectively means the Named Plaintiff and Defendant.

**1.19** **"Payment Date"** shall mean forty (40) days after the date of issuance of the Approval Order, when the Defendant will transmit the settlement payments to Shavitz Law Group, P.A., 951 Yamato Rd., Suite 285, Boca Raton, Florida 33431.

**1.20** "**Plaintiffs' Counsel**" means Shavitz Law Group, P.A. and Pitt McGehee, Palmer, Bonanni & Rivers, P.C.

**1.21** "**Releasees**" means SVS Vision and all of its parents, subsidiaries, predecessors, successors, and its and their employees and agents, as set forth in Section 4 of this Agreement.

**1.22** **"Relevant Period"** means the period from April 15, 2016 to March 15, 2019.

**1.23** "**Retail Office Manager**" or "**ROM**" means those persons employed by SVS Vision as salaried, exempt-classified Retail Office Managers in the United States.

**1.24** **"Service Award Recipients"** shall mean DONNA PIEBER and TYLENE CAUDELL.

1.25   "**Settlement**" means the settlement between the Parties embodied and contained in this Agreement.

1.26   "**Settlement Agreement**" or "**Agreement**" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

1.27   "**Settlement Check**" means the check issued to each Eligible Class Member for their proportionate share of the Net Amount calculated in accordance with this Agreement.

1.28   "**Settlement Data**" means the payroll data produced to Plaintiffs' Counsel in advance of the Parties' mediation which served as the basis for Plaintiffs' Counsel's calculation of the damages for the Eligible Class Members and the financial terms of the Settlement.

1.29   "**Settlement Notice**" means the document entitled Notice of Settlement to be approved by the Court in a form substantially similar to the Notice attached hereto as **Exhibit 3**.

2.   **APPROVAL AND NOTICE TO PLAINTIFFS**

2.1   By August 9, 2021, Plaintiffs' Counsel shall file the Approval Motion.  With the Approval Motion, Plaintiffs' Counsel also will file the Settlement Agreement and all exhibits thereto and the proposed Approval Order.  Among other things, the Approval Motion will ask the Court to: (a) issue and enter the Approval Order approving the Settlement as fair, adequate, and reasonable, and (b) approve the proposed Settlement Notice to be sent to the Eligible Class Members, and the notice distribution process.

2.2   At least two (2) business days before the Payment Date, Defendant shall deliver the Settlement Checks for all Eligible Class Members, the Named Plaintiff and Opt In Plaintiff, as well as the service awards, attorneys' fees and costs to Shavitz Law Group, P.A., Attn: Camar Jones, 951 Yamato Road Suite 285, Boca Raton, Florida 33431.

2.3   Defendant shall take reasonable steps to obtain the correct address of Eligible Class Members, and provide the Last Known Mailing Addresses for each of the Eligible Class Members when delivering the Settlement Checks to Plaintiff's Counsel.  Defendant will perform a skip trace for any Eligible Class Member prior to Plaintiff's Counsel mailing Settlement Checks.  For any Settlement Check that is returned by the United States Postal Service as undeliverable, Defendant shall perform another skip trace to obtain a correct address.

2.4   Plaintiffs' Counsel will mail the Settlement Notices and Settlement Checks to the Eligible Class Members, *via* First Class United States mail, postage prepaid, no later than two (2) business days after receiving the Settlement Checks from Defense Counsel.  The Notice will advise the Eligible Class Members of the Settlement and will explain how their settlement share was determined.  The Notice will also advise Eligible Class Members that by negotiating, signing cashing, or depositing the settlement check, they will provide Releasees with a release of their overtime misclassification wage and hour claims during the time they worked as salaried, exempt-classified ROMs, including FLSA claims and

state law wage and hour claims, including claims for liquidated damages, attorneys' fees, costs and expenses relating to the alleged violation.  The release will cover the period from April 15, 2016 to March 15, 2019.   The back of the Plaintiffs' settlement checks shall also contain similar release language.

2.5     Settlement Checks issued pursuant to this Agreement shall expire one hundred eighty (180) days following their issuance ("Acceptance Period").  If, based on the most recent report Defendant provides pursuant to Section 2.6 of this Agreement, a Settlement Check has not been cashed by any Eligible Class Member within ninety (90) days after it is mailed, Plaintiffs' Counsel shall send a letter reminding them of the expiration of the Acceptance Period, in the same form as **Exhibit 5**.  After the Acceptance Period expires, all uncashed Settlement Checks will be void, and SVS will issue a stop payment order on such checks. In the event an Eligible Class Member reports a lost or destroyed Settlement Check within the Acceptance Period, Defendant shall issue a stop payment order on the original check and issue a new check within fourteen (14) days of notification of the check being lost or destroyed.  The reissued check shall be valid for one hundred eighty (180) days from re-issuance.

2.6     Every thirty (30) days, Defendant will provide a list to Plaintiffs' Counsel with the names of the individuals who have cashed Settlement Checks ***and*** those who have not cashed Settlement Checks up to that date.

2.7     Effect of Court Failure to Approve Settlement.  In the event that the Court fails to approve the Settlement, the Parties (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated Settlement (b) and/or either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement.  In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted, except that both parties agree to work cooperatively and to petition the court for additional time such that neither party is prejudiced by the delay caused by the parties' settlement efforts.  In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

## 3.    SETTLEMENT TERMS

### 3.1    Settlement Payments.

(A)    Defendant agrees to pay up to a maximum gross amount of Two Hundred Thousand and 00/100 Dollars ($200,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Eligible Class Members, any Court-approved Service Awards as more fully set forth herein, and any claim for attorneys' fees and costs. Defendant will not be required to pay more than this amount under the terms of this Agreement, with the exception of Employer Payroll Taxes.

(B)    Any funds that remain unclaimed by Eligible Class Members who do not timely sign and cash their Settlement Checks, shall remain with Defendant.

**3.2** **Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of $80,000.00 as an award of attorneys' fees.  In addition, Plaintiffs' Counsel shall seek reimbursement of reasonable actual case-related costs and expenses, not to exceed $6,000.00 from the Gross Payment.  These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiff agrees that she will not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case.

(B)     The settlement is not conditioned on the Court's approval of Plaintiffs' Counsel's petition for fees, costs and expenses.  The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval.  In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder.  Any money requested for attorneys' fees or costs that are not approved by the Court shall remain part of the Net Amount.

**3.3** **Service Awards to Certain Plaintiffs.**

(A)     In their Approval Motion, Named Plaintiff will apply to the Court to receive Service Awards from the Gross Payment in the amount of: (a) 6,000.00 to DONNA PIEBER; and (b) $3,000.00 to TYLENE CAUDELL.

(B)     These Service Awards and any requirements for obtaining any such payment are separate and apart from, and in addition to, the Service Award Recipients' recovery from the Plaintiffs' Fund.  The settlement is not conditioned on the Court's approval of the Service Awards.  The substance of the Named Plaintiff's application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement.  The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval.  Service awards approved by the Court shall be deemed non-wage compensation in their entirety and shall be reported to the IRS on a Form 1099.  Service Award Recipients who receive and accept a Service Award shall provide Defendant with a general release (**Exhibit 4**) of claims that shall benefit Defendant and its subsidiaries, business units, members, shareholders, and their predecessors and successors, officers, directors, agents, employees and assigns.  Any Service Award money not approved by the Court shall remain part of the Net Amount.

**3.4** **Calculation of Eligible Class Members' Payments.**

(A)     The allocation to each Eligible Class Member for their Settlement Checks will be made from the Net Amount.  The estimated proportionate share of the Net Amount

for each Eligible Class Member will be determined pursuant to the following formula:

(1)     Each Eligible Workweek that an Eligible Class Member was employed between March 16, 2017 and March 15, 2019 shall receive 1 full point of credit, and each Eligible Workweek an Eligible Class Member was employed between April 15, 2016 and March 15, 2017 shall receive 1/3 point of credit.

(2)     To calculate each Eligible Class Member's proportionate share:

(a)     Add all points for all Eligible Class Members together to obtain the "Denominator";

(b)     Divide the number of points for each Eligible Class Members by the Denominator to obtain each Eligible Class Member's "Portion of the Net Amount";

(c)     Multiply each Eligible Class Member's Portion of the Net Amount by the Net Amount to obtain their Settlement Check amount.

(B)     Tax Characterization of Payments.

(1)     For tax purposes, 50% of the payment to an Eligible Class Member pursuant to this Section 3.4 shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages and other non-wage relief.

(2)     Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2.  Payments treated as interest and/or liquidated damages shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099.  The Defendant shall be responsible for calculating payroll tax and withholding, issuing the Settlement Checks and Service Awards and, issuing IRS Form W-2 and Form 1099.  No taxes shall be paid or reported as to Settlement Checks issued to Eligible Class Members who do not become Participating Class Members.  Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to each payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.  Any Service Award pursuant to Section 3.3 shall be deemed non-wage compensation in its entirety.

(3)     The employee portion of all applicable income and payroll taxes will be the sole responsibility of the Participating Class Member receiving and negotiating the Settlement Check or Service Award.  Defendant makes no representations, and it is understood and agreed that Defendant has made no representations, as to the taxability of any portions of the settlement payments to any Eligible Class Member, the payment of any costs or award of attorneys' fees, or any payments to the Service Award Recipients. Neither Plaintiffs' Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(4)     None of the amounts paid to any Plaintiff shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendant, including for purposes of any bonus of any kind.

**4.      RELEASE OF CLAIMS**

**4.1**   All Settlement Checks shall contain, on the back of the check, the following limited endorsement (or a similar endorsement):

> By signing and cashing this check, I waive, release, and forever discharge SVS and its parents, subsidiaries, predecessors, and successors, and all of their respective officers, directors, employees, agents, insurers, executives, representatives, assigns, and attorneys from any overtime misclassification wage and hour claims I have or may have had under the FLSA and applicate wage and hour laws, during the time I worked as an exempt-classified Retail Office Manager between April 15, 2016 to March 15, 2019.  This includes claims for liquidated damages, attorneys' fees, costs, and expenses.

**4.2**   Any Eligible Class Member who does not timely sign and cash a Settlement Check will not be bound by any release of claims.

**4.3**   To receive their Service Awards, the Service Award Recipients will each execute (and not revoke) the general release attached hereto as **Exhibit 4** no later than the Payment Date.

**5.      PARTIES' AUTHORITY**

**5.1**   The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

**6.      MUTUAL COOPERATION**

**6.1**   The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution

of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 7. NOTICES

7.1     Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and addressed as follows:

To Plaintiffs:

Camar R. Jones
Shavitz Law Group, P.A.
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
(561) 447-8888
(561) 447-8831 (facsimile)
cjones@shavitzlaw.com

To Defendant:

James B. Hiller
GORDON REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800
Chicago, Illinois 60606
(312)787-4949
(312)787-4995
jhiller@grsm.com

## 8. NO ADMISSION OF LIABILITY

8.1     Defendant denies all of the allegations made by Named Plaintiff in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 9. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

9.1     Further Acts.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

9.2     No Assignment.  Plaintiffs' Counsel and Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

9.3     Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

9.4     Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

9.5     Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

9.6     Captions.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

9.7     Construction.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

9.8     Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.  The Parties shall seek to have the Litigation dismissed with prejudice within thirty (30) days after the expiration of the Acceptance Period.

9.9     Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement

shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

9.11    Counterparts.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

9.12    Facsimile, Electronic and Email Signatures.  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email or other electronic means to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

9.13    Signatories.  This Agreement is valid and binding if signed by Defendant' authorized representative and any one of the Named Plaintiff.

**WE AGREE TO THESE TERMS.**

Dated:  September 16, 2021          SVS VISION, INC.

By:    _____

Its:    _____General Counsel_____

Dated:  September ____21____, 2021          DONNA PIEBER

_____

# EXHIBIT 1

**(to Settlement Agreement)**

| Payroll Initials | Compensable Weeks Worked | 2 Year Weeks | 3 Year Weeks | Damages | Overtime | Liquidated Damages |
|---|---|---|---|---|---|---|
| JA | 17 | 12 | 5 | $1,282.78 | $641.39 | $641.39 |
| HA | 8 | 8 | 0 | $750.90 | $375.45 | $375.45 |
| SA | 85 | 85 | 0 | $7,978.27 | $3,989.13 | $3,989.13 |
| SB | 211 | 99 | 48 | $10,794.11 | $5,397.06 | $5,397.06 |
| JB | 125 | 11 | 50 | $2,596.83 | $1,298.42 | $1,298.42 |
| SB | 94 | 0 | 30 | $938.61 | $469.31 | $469.31 |
| YLC | 25 | 18 | 7 | $1,908.52 | $954.26 | $954.26 |
| TC | 67 | 0 | 4 | $125.15 | $62.57 | $62.57 |
| CYC | 175 | 59 | 52 | $7,164.78 | $3,582.39 | $3,582.39 |
| PD | 121 | 6 | 51 | $2,158.81 | $1,079.40 | $1,079.40 |
| DE | 116 | 10 | 52 | $2,565.54 | $1,282.77 | $1,282.77 |
| HF | 12 | 12 | 0 | $1,126.34 | $563.17 | $563.17 |
| LF | 40 | 40 | 0 | $3,754.48 | $1,877.24 | $1,877.24 |
| AMG | 14 | 14 | 0 | $1,314.07 | $657.03 | $657.03 |
| RH | 147 | 50 | 52 | $6,320.02 | $3,160.01 | $3,160.01 |
| SH | 1 | 1 | 0 | $93.86 | $46.93 | $46.93 |
| JJJ | 109 | 0 | 45 | $1,407.92 | $703.96 | $703.96 |
| KK | 118 | 16 | 39 | $2,721.99 | $1,360.99 | $1,360.99 |
| NK | 40 | 40 | 0 | $3,754.48 | $1,877.24 | $1,877.24 |
| KM | 102 | 0 | 38 | $1,188.91 | $594.45 | $594.45 |
| BM | 38 | 38 | 0 | $3,566.76 | $1,783.38 | $1,783.38 |
| DM | 5 | 0 | 5 | $156.44 | $78.22 | $78.22 |
| JN | 67 | 7 | 52 | $2,283.96 | $1,141.98 | $1,141.98 |
| HO | 76 | 0 | 12 | $375.44 | $187.72 | $187.72 |
| DP | 111 | 48 | 34 | $5,569.13 | $2,784.57 | $2,784.57 |
| AAQ | 73 | 52 | 21 | $5,537.85 | $2,768.93 | $2,768.93 |
| RRR | 1 | 1 | 1 | $125.15 | $62.57 | $62.57 |
| BR | 66 | 0 | 13 | $406.73 | $203.37 | $203.37 |
| BR | 112 | 0 | 49 | $1,533.06 | $766.53 | $766.53 |
| AAR | 12 | 12 | 0 | $1,126.34 | $563.17 | $563.17 |
| KLS | 56 | 56 | 0 | $5,256.27 | $2,628.14 | $2,628.14 |
| JS | 213 | 98 | 51 | $10,794.11 | $5,397.06 | $5,397.06 |
| TS | 79 | 0 | 15 | $469.31 | $234.65 | $234.65 |
| KS | 110 | 3 | 52 | $1,908.51 | $954.26 | $954.26 |
| ST | 132 | 35 | 52 | $4,912.09 | $2,456.05 | $2,456.05 |
| TV | 97 | 0 | 33 | $1,032.47 | $516.24 | $516.24 |
| Totals | | | | $104,999.99 | $52,500.01 | $52,500.01 |

# EXHIBIT 2

**(to Settlement Agreement)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

```
-----------------------------------------------------------X
DONNA PIEBER, on behalf of herself and          :
all others similarly situated,                  :
                                                :   Case No.: 20-cv-13051-LVP-CI
                    Plaintiffs,                  :
                                                :
             -against-                          :
                                                :
 SVS VISION, INC.                               :
                                                :
                    Defendant.                  :
-----------------------------------------------------------X
```

**FINAL ORDER APPROVING**
**FLSA COLLECTIVE ACTION SETTLEMENT**

The above-entitled matter came before the Court on the Joint Motion for Approval of Settlement ("Motion for Settlement Approval"). After reviewing the Motion for Settlement Approval, the supporting Memorandum of Law in Support of the Motion for Settlement Approval (the "Memorandum") and the supporting exhibits, the Court hereby GRANTS the motion, and hereby ORDERS as follows:

1.       The Plaintiff requests a one-step approval process for their FLSA collective action settlement. The Court finds that, based on the representations of Plaintiff's counsel, which are not disputed for the purpose of this proposed settlement, a one-step approval process is appropriate because it satisfies all the procedural and substantive prerequisites for approval of an FLSA collective action settlement including: the settlement is a fair and reasonable, (i) including for the collective action members who will receive notice and a settlement check; (ii) approving the form of and distribution plan for the notice; and (iv) binding only those collective action members who cash the settlement check.

2.      This Court also finds that the settlement in this Fair Labor Standards Act action is a fair and reasonable resolution of *bona fide* dispute. The settlement is approved, and the terms of the Parties' Settlement Agreement are incorporated herein.

3.      The Court also approves Plaintiff's proposed (i) Settlement Notice, and (ii) plan for distribution of the Notice and Settlement Checks.

4.      The service awards to Named Plaintiff Donna Pieber, and the Opt In Plaintiff Tylene Caudell, as set forth in the Settlement Agreement, are approved.

5.      Plaintiffs' counsel's request for attorneys' fees and litigation expenses is granted.

6.      Without affecting the finality of this Order, the Court retains jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement.

7.      This action is hereby dismissed with prejudice in its entirety as against Defendant, and without attorney's fees or costs to any party except as provided in this Order.

8.      The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this _____ day of _____, 2021.


_____
**United States District Judge**

# EXHIBIT 3

**(to Settlement Agreement)**

## NOTICE OF SETTLEMENT OF UNPAID WAGE LAWSUIT INVOLVING SVS VISION RETAIL OFFICE MANAGERS

*Pieber v. SVS Vision, Inc.*, Case No. 20-cv-13051-LVP-CI (Eastern District of Michigan)

*A court authorized this Notice. This is not a solicitation from a lawyer.*

A settlement has been entered to resolve a collective action lawsuit that has been filed under the Fair Labor Standards Act ("FLSA") on behalf of certain Retail Office Managers ("ROMs") who were employed by SVS Vision, Inc. ("SVS") between April 15, 2016 and March 15, 2019 ("the Eligibility Period"), and who did not sign arbitration agreements during their employment with SVS.  The case is filed in the United States District Court for the Eastern District of Michigan, and the case number is 20-cv-13051-LVP-CI.   The Named Plaintiff alleged that during her employment as a ROM, she regularly worked overtime, but SVS did not compensate her for the overtime hours she worked.

SVS denies the allegations in the lawsuit and maintains that it properly compensated ROMs under the FLSA and applicable state and local laws.  SVS has entered into this settlement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. The Court has not made any ruling on the merits of the claims, and has made no determination that any party has prevailed in this action.

**A settlement check payable to you is enclosed.  Read this entire Notice before negotiating the check.  By negotiating the check, you will be releasing SVS from certain claims as explained in Section 4 below.**

**Deadline**: **The last day to cash the enclosed settlement check is [180 days from mailing]**.  After that date, the enclosed check will be null and void, and you will no longer be eligible for a payment from the above-captioned action.

### 1.  What does the settlement provide?

Under the terms of the settlement, SVS has agreed to pay a total of $200,000.00 to settle the claims raised in the lawsuit.  This amount includes the payment to you, 36 other ROMs, and the Plaintiffs' attorneys' fees and costs.  The Court has approved the settlement, including these payments.

The settlement funds are being divided among 36 ROMs who were employed by SVS during the Eligibility Period, and who did not sign arbitration agreements during their employment.

### 2.  How much is my payment and how was it calculated?

The gross amount of your settlement check was determined based on the number of weeks you were employed as a ROM during the Eligibility Period.

Neither the attorneys representing you, nor the Named Plaintiff, For Eyes or their attorneys make any representations concerning the tax consequences of your settlement payment.  You are advised

to obtain personal tax advice prior to acting in response to this Notice.

### 3.  How do I get my payment?

A check is enclosed.  All you have to do is negotiate the settlement check.

### 4.  What am I giving up?

By negotiating the settlement checks, per the terms of the Settlement Agreement,  you will waive, release, and forever discharge SVS and its parents, subsidiaries, predecessors, and successors and all of their officers, directors, employees, agents, insurers, executives, representatives, assigns, and attorneys from any overtime misclassification wage and hour claims you have or may have under the FLSA and applicable state wage and hour laws while employed as a ROM during the Eligibility Period.  This includes claims for liquidated damages, attorneys' fees, costs, penalties, interest, and expenses.

### 5.  How will the lawyers be paid?

The Court has approved payment to Plaintiffs' Counsel of XXXX for attorneys' fees.  These fees compensate Plaintiffs' Counsel for investigating the facts, litigating the case, and negotiating and finalizing the settlement.  The Court also has approved payment of Plaintiffs' Counsel's out-of-pocket costs up to $XXXXX.

The Court has approved service awards to the Named Plaintiff in the amount of $XXXX, and XXXX to an Opt In Plaintiff who significantly contributed to the case, to recognize the risks they took, the scope of the release they executed, and their services to the collective.

### 6.  How do I get more information?

This Notice summarizes the proposed settlement.  If you have other questions about the settlement, you can contact Plaintiffs' Counsel at:

Gregg I. Shavitz
Camar R. Jones
Shavitz Law Group, P.A.
951 Yamato Rd, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
E-mail: info@shavitzlaw.com

DATED: _____, 2021

# EXHIBIT 4

**(to Settlement Agreement)**

## General Release

SVS Vision, Inc. and [NAME], his/her heirs, executors, administrators, successors, and assigns (collectively, "Employee"), agree that:

1.     Service Award.  Employee hereby understands and acknowledges that signing and not revoking this General Release ("Release") is a condition to receiving the Service Award specified under Section 3.3(A) of the Joint Stipulation of Settlement ("Joint Stipulation") approved by the Court in the matter of *Pieber v. SVS Vision, Inc., et. al.,* No. 20-cv-13051-LVP-CI pending in the United States District Court for the Eastern District of Michigan (the "Lawsuit").

2.     General Release, Claims Not Released and Related Provisions.

a.     General Release of All Claims.  Employee knowingly and voluntarily releases and forever discharges SVS, its subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Release as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted which Employee has or may have against Releasees as of the date of execution of this Release, including, but not limited to, any alleged violation of the following:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Fair Labor Standards Act;
- The Genetic Information Nondiscrimination Act;
- The Equal Pay Act;
- The Sarbanes-Oxley Act retaliation provisions;
- The False Claims Act retaliation provisions;
- The Dodd-Frank Wall Street Reform and Consumer Protection Act retaliation provisions;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law, including, without limitation, breach of contract, breach of a covenant of good faith and fair dealing, interference with business opportunity or contracts, negligence, misrepresentation, fraud, detrimental reliance, personal injury, assault, battery, defamation, false light, invasion of privacy, infliction of emotional distress, retaliation, constructive discharge, or wrongful discharge;
- any basis for recovering costs, fees, or other expenses, including attorneys'

fees incurred in these matters

        b.    <u>Claims Not Released.</u>  Employee is not waiving any rights Employee may have to (a) his/her own vested accrued employee benefits under SVS' health, welfare or retirement benefits plans as of the date Employee signs this Release; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; and/or (c) pursue claims which by law cannot be waived by signing this Release.

        c.    <u>Governmental Agencies.</u>  Nothing in this Release prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Release preclude, prohibit, or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies.  However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

        3.    <u>Governing Law and Interpretation</u>.  This Release shall be governed and conformed in accordance with the laws of the state in which Employee was employed by SVS immediately prior to the date Employee signs this Release without regard to its conflicts of laws provision.  In the event of a breach of any provision of this Release, either party may institute an action specifically to enforce any term or terms of this Release and/or seek damages for breach.  Should any provision of this Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Release in full force and effect.

        4.    <u>Waiver of Rights</u>.  Employee understands and acknowledges that this is a legally binding document under which Employee is giving up certain rights.  Employee has been advised to consult with an attorney prior to signing this document and has been given at least twenty-one (21) calendar days within which to consider this Release.

        5.    <u>No Admission of Wrongdoing</u>.  Employee and SVS agree that neither this Release nor the furnishing of the consideration for this Release shall be deemed or construed at any time for any purpose as an admission by either party, or evidence of any wrongdoing, liability or unlawful conduct of any kind.

        6.    <u>Amendment</u>.  This Release may not be modified, altered or changed except upon express written consent of both parties wherein specific reference is made to this Release.

        7.    <u>Counterparts and Signatures</u>.  This Release may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument.  A signature made on a faxed or electronically mailed copy of the Release or a signature transmitted by facsimile or electronic mail will have the same effect as the original signature.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO EXECUTE AND RETURN THIS RELEASE. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS RELEASE.**

**EMPLOYEE MAY REVOKE THIS RELEASE FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY EMPLOYEE SIGNS THIS RELEASE.**

**EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS RELEASE DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

**IN WITNESS WHEREOF**, the parties hereto knowingly and voluntarily executed this Release as of the date set forth below:

EMPLOYEE NAME                                    SVS VISION, INC.

_____                         By: _____

                                                 Its: _____

Date: _____                      Date: _____

# EXHIBIT 5

**(to Settlement Agreement)**

**IMPORTANT REMINDER REGARDING THE SVS VISION RETAIL OFFICE MANAGER
SETTLEMENT**

*Pieber v. SVS Vision, Inc.*, **Case No. 20-cv-13051-LVP-CI (Eastern District of Michigan)**

On [date], you were mailed a settlement check in the above-referenced case.  Our records indicate that your check has not been cashed or deposited.

If you did not receive or no longer have the settlement check, you should contact you should contact:

Shavitz Law Group, P.A.
951 Yamato Rd, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
E-mail: info@shavitzlaw.com

Settlement checks that are not cashed or deposited on or before [date] will be null and void.

**SVS Vision Retail Office Manager Settlement**
**IMPORTANT LEGAL REMINDER**

«FIRSTNAME» «LASTNAME»
«ADDRESS1»
«ADDRESS2»
«CITY» «STATE»  «ZIP»
«COUNTRY»