UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA PIEBER, on behalf of
herself and all others similarly
situated,

        Plaintiffs,                  Civil Case No. 20-13051
                                          Honorable Linda V. Parker

v.

SVS VISION, INC.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING FINAL APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**

On November 16, 2020, Donna Pieber brought this lawsuit under the Fair Labor Standards Act ("FLSA") on behalf of herself and other employees who worked as Retail Office Managers ("ROMS") for SVS Vision, Inc.  Pieber claims that SVS failed to comply with the FLSA's overtime pay requirements.  (ECF No. 1.)  Tylene Caudell signed a form consenting to join this collective action, which was attached to Pieber's Complaint.  (ECF No. 1-1.)  The parties have settled the dispute and now move for final approval of their settlement agreement.  (ECF No. 21.)  The Court held a hearing with respect to the parties' motion on March 2, 2022, at which time it requested some modifications to their proposed procedures.  A recent filing by the parties reflects that the Court's concerns have been

addressed. (ECF No. 25.) Therefore, and for the reasons discussed below, the Court is granting final approval of the settlement

## Background

From approximately September 2016 to February 2018, Pieber was employed by SVS as a ROM at one of its Missouri stores. (Compl. ¶ 10, ECF No. 1 at Pg ID 2.) She frequently worked more than 40 hours per week but was not paid overtime. (*Id.* ¶¶ 11, 12, Pg ID 2.) SVS classified Pieber as an exempt employee. (*Id.* ¶ 12, Pg ID 2.)

Pieber brought this putative collective action on behalf of herself and other ROMs who worked at any of SVS' nationwide stores on or after April 15, 2016. (*Id*. ¶ 24, Pg ID 3.) As indicated, Tylene Caudell signed a consent form to opt into the collective action, which was attached to Pieber's Complaint. (ECF No. 1-1.) SVS filed an Answer to the Complaint on January 28, 2021. (ECF No. 1.) A Scheduling Order was entered March 4, setting a December 3, 2021 deadline for discovery and a February 11, 2022 deadline for dispositive motions. (ECF No. 9.)

Before this lawsuit was initiated, counsel for Pieber investigated the claims of Pieber and similarly situated ROMs and contacted SVS about the possibility of exploring pre-litigation mediation. SVS provided documentation for the 36 ROMs it employed during the relevant period, who did not execute arbitration agreements, which Pieber's counsel used to prepare a damage model reflecting the potential

overtime owed to the ROMs. This model calculated SVS' potential exposure if found to have acted in bad faith and if bad faith was not a factor. The parties participated in a full-day mediation session on December 11, 2019, before a retired federal judge in Chicago, Illinois.

The parties did not resolve the claims at mediation but continued informal settlement negotiations for ten months thereafter. In the meantime, this lawsuit was filed and they exchanged discovery pursuant to this Court's Scheduling Order. They ultimately reached a resolution which provides for SVS to pay a total settlement amount of $200,000. This amount is comprised of: (a) an award to "Eligible Class Members" totaling $105,000; (b) service awards of $6,000 and $3,000 to Pieber and Caudell, respectively; (c) attorney's fees of $80,000, and (d) costs of $6,0000. (*See* Jt. Stip. of Settlement ¶¶ 3.1-3.3, ECF No. 21 at Pg ID 160-61.) The Eligible Class Member[s]" are the 36 former ROMs employed by SVS in the United States during the relevant period (i.e., from April 15, 2016 to March 15, 2019) listed on Attachment 1 to the settlement.[1] (*See id*. ¶¶ 1.6, 1.22, Pg ID 157-58; Attachment 1, *id.* at Pg ID 168.)

The settlement agreement provides that within 40 days of the Court's approval, SVS will deliver to Plaintiffs' counsel the settlement checks for the eligible class members, along with payments for the service awards, and attorneys'

---

[1] "Eligible Class Member" excludes ROMs who executed arbitration agreements.

3

fees and costs.  (*Id.* ¶ 2.2, Pg ID 159.)  Plaintiffs' counsel will then send the checks with the proposed Settlement Notice to the Eligible Class Members via First Class U.S. mail within two business days.  (*Id*. ¶ 2.4, Pg ID 159.)  The notice, as revised, advises Eligible Class Members that "by signing, cashing, depositing or otherwise negotiating the [settlement] check," they will provide Defendant with a release of their overtime misclassification wage and hour claims under the FLSA and applicable state wage and hour laws for the time they worked as salaried, exempt-classified ROMs during the Relevant Period.  (Revised Notice, ECF No. 25-1 at Pg ID 195.) . The back of the settlement checks will also contain the release language and inform the recipients that by negotiating the check they consent to join and opt into this action. (Jt. Notice at 1, ECF No. 25 at Pg ID 193.)  Settlement Checks issued to Eligible Class Members will expire 180 days following their issuance ("Acceptance Period").  (Jt. Stip. of Settlement ¶ 2.5, ECF No. 21 at Pg ID 160.)

Eligible Class Members' payments were calculated based on a formula that divided each member's points, which were based on the number of "Eligible Work Week[s]" (defined as "any and all weeks" the individual worked for SVS as a ROM during the Relevant Period), divided by the total points for all members multiplied by the net settlement amount ($105,000). (Settlement ¶ 3.4(A) & Ex. 1, ECF No. 21-1 at Pg ID 161-62, 168.)

## Analysis

When reviewing a proposed FLSA settlement, the court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355. There are several factors courts consider in making this determination:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citation omitted); *see also Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). Additionally, where the agreement includes the payment of attorney's fees, the court must assess the reasonableness of that amount. *Wolinsky*, 900 F. Supp. 2d at 336 (citing cases finding judicial review of the fee award necessary). "[T]he Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that 'the interest of [the] plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of the relief counsel procured for the clients.' " *Id*. (quoting *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997)).

For the reasons set forth in the parties' motion, the Court finds that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." As the parties indicate, there are bona fide disputes as to whether (i) the ROMs are similarly situated so as to warrant pursuing this matter as a collective action, (ii) SVS acted willfully, and (iii) the ROMS were exempt from the FLSA's overtime requirements. (*See* ECF No. 21 at Pg ID 123-25.) The settlement will avoid complex, expensive, and perhaps protracted litigation (*id*. at Pg ID 125-26), and counsel engaged in sufficient discovery to calculate the risks involved in continued litigation (*id*. at Pg ID 117-19). There is nothing suggesting collusion. Counsel for the parties and the parties themselves are of the opinion that the settlement is a fair and reasonable resolution. (*Id*. at Pg ID 126-27.) There are no absent class members, as this is an opt-in case. The parties do not address the public interest but such interests are served by settlements that compensate workers for their claimed overtime work and preserve judicial resources.

The settlement allocation is fair and reasonable. It awards Eligible Class Members a net award for approximately 4.9 hours of overtime for each week they worked within the three-year statute of limitations, in addition to liquidated damages. This reflects the average number of overtime hours worked each week as reflected in the time records produced by SVS. While the parties do not state what percentage of the total possible award members are receiving, it appears that

the recovery is significant, particularly as it encompasses a three-year rather than a two-year period of unpaid overtime wages.

For the reasons outlined in the parties' motion, the service awards of $6,000 and $3,000 to Pieber and Caudell, respectively, also are fair and reasonable. (ECF No. 21 at Pg ID 128-33.) So too are the attorneys' fees and costs. The award for attorneys' fees ($80,000) was determined based on counsel's "lodestar" (hours x hourly rate) and is less than the lodestar amount ($137,660.00 based on 266.6 hours of attorney and paralegal work at hourly rates ranging from $700.00 to $150.00). The hours expended reflect work performed during the pre-suit investigation beginning in mid-2019, through the filing of the case in November 2020, and the joint motion on September 24, 2021. Notably, the attorneys' fees were negotiated independently of the settlement to eligible members and are not being deducted from the amounts being paid to members for their damages.

As revised, the Notice of Settlement fully and accurately informs eligible collective members about this lawsuit and the settlement agreement. It advises eligible collective members of their rights, the terms of the settlement, how they may participate and what they will receive, and what rights they are releasing by negotiating the settlement check. It further informs eligible collective members that only those who cash the settlement check are bound by the terms of the settlement agreement.

## Conclusion

For the reasons stated, the Court is **GRANTING** the Joint Motion for Order Approving Fair Labor Standards Act Settlement (ECF No. 21) and **ORDERS** as follows:

1. The settlement in this FLSA action is a fair and reasonable resolution of a bona fide dispute. The one-step approval process requested is appropriate because it satisfies all procedural and substantive prerequisites for approval of an FLSA collective action. The terms of the Parties' Settlement Agreement are incorporated herein.

2. The Court also approves Plaintiff's proposed revised Settlement Notice and plan for distribution of the Notice and Settlement Checks.

3. The service awards to Named Plaintiff Donna Pieber, and the Opt In Plaintiff Tylene Caudell, as set forth in the Settlement Agreement, are approved.

4. Plaintiffs' counsel's request for attorneys' fees and litigation expenses is granted.

5. Without affecting the finality of this Order, the Court retains jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement.

6. This action is hereby dismissed with prejudice in its entirety as against Defendant, and without attorney's fees or costs to any party except as provided in this Order.

7. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 8, 2022